CHARLES J. BONAPARTE, Executor of ELIZABETH PATTERSON *vs.* THE STATE OF MARYLAND. SAME *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Sections 83, 98, 109 and 117 of Article 93, of the Code— Claims against a Decedent's estate — Taxes — Orphans' Courts—Duty of Executors and Administrators in respect of Taxes—Situs of Personal property in respect of Taxation—Domicil—Jurisdiction—Act of 1878, ch. 413, sec. 2— Exemption from Taxation—Misjoinder.*

Section 109, of Article 93, of the Code, provides that " when all the assets have been paid away, delivered or distributed as herein directed, and a claim shall afterwards be exhibited, of which the administrator hath not notice by the exhibition of the claim legally authenticated, as herein required, he shall not be answerable for the same." Section 117 of the same Article declares, that "no administrator shall be bound to take notice of any claim against his decedent, unless the same shall be exhibited to such administrator legally authenticated; or unless such claim shall have been passed by the Orphans' Court, and entered by the register upon his docket, or unless a suit shall be pending against such administrator for such

Bonaparte, Ex'r *vs.* The State, and the Mayor, &c., of Balto.

claim." ' Section 98 of said Article provides, " that no administrator shall be allowed in his account for any claim discharged by him, unless he produce the claim passed by the Orphans' Court, or proven as herein directed." And section 83 of said Article, prescribing how debts shall be proved against estates, provides, that " no administrator shall discharge any claim against his decedent, (otherwise than at his own risk,) unless the same be first passed by the Orphans' Court granting the administration, or unless the said claim shall be passed according to the following rules." HELD:

That taxes do not constitute such claims as are within the contemplation of the foregoing sections.

The Orphans' Courts have no power to pass upon the merits and validity of claims for taxes.

Executors and administrators are held affected with notice of taxes due upon property in their custody, and it is their legal duty to ascertain and pay them, next after funeral expenses, before proceeding to the further administration of the estate.

The domicil of a testator when living determines the *situs* of his personal property of an intangible nature, not permanently located elsewhere, for purposes of taxation; and his place of domicil at the time of his death determines the place of administering upon his estate.

Personal property of an intangible nature, not permanently located elsewhere, such as bonds and stocks, must be deemed to remain within the jurisdiction of the Court pending the settlement of the estate, and be there liable to taxation.

By the Act of 1878, ch. 413, sec. 2, " all shares of stock, or shares in any bank other than a national bank, or in any company or corporation, incorporated by, or located in and doing business in any other State, or in any territory or country, owned by residents of this State; all bonds made by any State, which were not exempted from taxation by the law of said State authorizing the issue of such bonds; all bonds issued by any territory or by any corporation, shall be liable to be valued to the respective owners thereof, and to be assessed." HELD:

1st. That the only exemption clearly provided by the express terms of said Act applied exclusively to the bonds of *a State*, which by the law authorizing their issue were exempted from taxation. The comity and other reasons underlying the policy dictating this ex-

Bonaparte, Ex'r *vs.* The State, and the Mayor, &c., of Balto.

emption are not strictly applicable to foreign, municipal or other corporations, whose credit is not identified with that of the State, which for certain reasons and objects of a special and local nature may be disposed to aid them by granting immunity from the taxation within its own borders.

2nd. That said exemption does not apply to City of Philadelphia stock, part of the public debt of that city, and exempted from taxation by the laws of Pennsylvania.

In an action of assumpsit against an executor to recover taxes due on the estate of his testatrix, it is not a misjoinder to unite a count for taxes due by the testatrix in her life time, with a count for taxes due from the executor on the same property while in his hands as executor pending the settlement of the estate.

APPEALS from the Court of Common Pleas.

The cases are stated in the opinion of the Court.

*Exception.*—The defendant prayed the Court to rule as follows in each case, the cases being tried before the Court without a jury, upon an agreed statement of facts:

1. That the plaintiff cannot recover for any taxes for the years 1878 or 1879, upon the $58,000, of the City of Philadelphia stock, which is conceded by the agreed statement of facts, to have been a part of the public debt of the City of Philadelphia, and exempted from taxation of every kind by the laws of the State of Pennsylvania, authorizing said debt to be so contracted by said municipal corporation.

2. That the plaintiff cannot recover from the defendant in this action, for any taxes levied for the year 1879, under the ordinances of the Mayor and City Council, approved May 8th, 1879, more than a month after the death of the testatrix, Mrs. Patterson, it being conceded by the agreed statement of facts, that the defendant now is, and has been, ever since the year 1876, a resident of Baltimore County.

The Court (BROWN, C. J.,) rejected both prayers. The defendant excepted, and the verdict and judgment being against him, he appealed.

The causes were argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, RITCHIE, and BRYAN, J.

*William Reynolds, George Hawkins Williams,* and *I. Nevett Steele,* for the appellant.

*Charles B. Roberts, Attorney-General,* for the State of Maryland.

*Bernard Carter, City Solicitor,* and *James L. McLane, City Counsellor,* for the Mayor and City Council of Baltimore.

RITCHIE, J., delivered the opinion of the Court.

These two appeals, embraced in one record and tried together, were taken by the appellant as executor of the will of Mrs. Elizabeth Patterson, late of Baltimore City, deceased, from judgments recovered against him in suits respectively by the State of Maryland and the Mayor and City Council of Baltimore, for taxes on the personal property of said Elizabeth Patterson, consisting of stocks, bonds and other intangible property not permanently located in that city, assessed in her life-time, and for taxes on the same property while in the hands of said executor pending the settlement of the estate.

It appears that letters testamentary were granted to the appellant, by the Orphans' Court of Baltimore City, on the ninth of April, 1879; that on the thirteenth of September following, said Court, in accordance with his petition, in which he states that he had paid all the debts of said testatrix which had come to his knowledge, and was content to assume any others that might be demanded,

passed an order allowing him to pass a final account, making distribution of said estate; and that accordingly, on the first of October, 1879, he passed such final account and made such distribution,—six months not having elapsed since his letters were issued, and a notice of that length not having been given to creditors to produce their claims.

None of the tax bills were presented to the Orphans' Court for their approval and passage; but were presented to the executor both before and after the settlement of his final account, who denied their correctness; and because of his refusal to pay them these suits were instituted December 31st, 1880, about fifteen months after his said final distribution. The failure to have these claims for taxes passed by the Orphans' Court, and to bring suit upon them within nine months from his refusal to pay them, are among the grounds upon which the appellant resists their recovery.

In support of this position, the appellant relies upon the following sections of the Code: *section* 109, *Art.* 93, which provides that, "Where all the assets have been paid away, delivered or distributed, as herein directed, and a claim shall afterwards be exhibited, of which the administrator hath not notice by the exhibition of the claim legally authenticated, as herein required, he shall not be answerable for the same." Section 117 of the same Article which declares: "No administrator shall be bound to take notice of any claim against his decedent, unless the same shall be exhibited to such administrator legally authenticated; or unless such claim shall have been passed by the Orphans' Court, and entered by the register upon his docket, or unless a suit shall be pending against such administrator for such claim;" section 98, which provides that "no administrator shall be allowed in his account, for any claim discharged by him, unless he produce the claim passed by the Orphans' Court, or proven as herein directed;" and also sec. 83, the first of the series

of sections of said Article 93, prescribing how debts shall be proved against estates, which provides that, no "administrator shall discharge any claim against his decedent (otherwise than at his own risk) unless the same be first passed by the Orphans' Court, granting the administration, or unless the said claim shall be passed according to the following rules."

The question thus arises, whether taxes constitute such claims as are within the contemplation of these sections. If they are of such nature as not to require authentication by the Orphans' Court, or institution of suit to affect executors and administrators with notice of their existence, and create their liability to discharge them, these sections cannot avail the appellant in the present suits.

These sections of the Code are under the general caption of "*Debts.*" Are taxes properly comprehended in the use of that term? The word "debts" in its common signification, which is that in which we think the Code employs it, imports the moneyed obligation of a person incurred in his private capacity, or from his individual acts; and not such obligations as are imposed upon him by law in his public relations, or in common with all other citizens. As defined by this Court in the case of *Mayor, &c. of Baltimore vs. Greenmount Cemetery,* 7 *Md.,* 517, the word "tax" means "a burden, charge or imposition put or set upon a person or property for public uses." And in *Cooley on Taxation, p.* 13, the distinction between taxes and debts is thus stated: "Taxes are not debts in the ordinary sense of that term, and their collection will in general depend on the remedies which are given by statute for their enforcement. Where no remedy is specially provided, a remedy by suit may be fairly implied, but where one is given which does not embrace an action at law, a tax cannot in general be recovered in a common law action as a debt. Taxes are not demands against which a set-off is admissible; their assessment does not

constitute a technical judgment, nor are they contracts
between party and party, either express or implied; but
they are the positive acts of the government through its
various agents, binding upon the inhabitants, and to the
making and enforcing of which their personal consent in-
dividually is not required."

The scrutiny and approval of the Orphans' Court pro-
vided for by the Code as to claims made against estates of
deceased persons, are safeguards applicable and appropri-
ate to claims essentially of a private nature, arising from
individual transactions, and of which an administrator
cannot be presumed to have knowledge. The merits or
validity of private demands may well be inquirable into
by the Orphans' Court, and its sanction of their amount
be given or withheld as seems proper; but the exercise
of such a supervision over claims for taxes, which are es-
tablished by officers specially authorized to impose and
collect them, would constitute the Orphans' Court a tri-
bunal to review the action of those conducting the Reve-
nue Department of the State. The acts of such officers
cannot depend upon the approval of the Orphans' Court
for their validity, but derive their force as proceedings of
functionaries clothed with public authority and responsi-
bility for the discharge of their special duties. To devolve
on the Orphans' Court the allowance and rejection of such
claims would open for their determination the liability of
the property assessed, the correctness of the rate and
amount of taxation, and all kindred questions.

The liability for taxes is an incident to property, and
essential to the support of the government; every posses-
sor of property therefore is put upon inquiry as to what
his liability is; and the tax books being public records,
are open and accessible sources of information to all citi-
zens. It may further be remarked, that while various
evidences of debts are enumerated in the sections of the
Code providing for the mode of authenticating claims

against estates, no mention whatever is made of taxes. And that they are not meant to be covered by those sections seems clear, from section 72 of Art. 81, relating to *revenue* and *taxes,* which prescribes that "Administrators shall pay all taxes due from their decedents as preferred debts, and to the exclusion of all others, except the necessary funeral expenses, and on failure their bonds shall be put in suit for the use of the State, and recovery had for the whole amount of taxes due and interest from the time they were payable; this section shall also apply to guardians for taxes upon property in their hands as such." Thus executors and administrators are evidently held affected with notice of taxes due upon the property in their custody, and it is their legal duty to ascertain and discharge them, next after funeral expenses, before proceeding to the further administration of the estate.

As to the counts in the *narr.* for the taxes upon the bonds and stocks of the testatrix in the hands of appellant as executor, he takes the further defence, that being a resident of Baltimore County, he was taxable there and no where else, by reason of the legal title to this intangible property being in him. That he held such legal title is true ; but he held it in the special character of an officer of the law for the specific and temporary purpose of the administration of the property under the supervision and direction of the Court from which he received letters testamentary. The domicile of a testator when living determines the situs of his personal property of an intangible nature not permanently located elsewhere, for purposes of taxation, and his place of domicile at the time of his death determines the place of administering his estate. The situs of the personal property, generally speaking, and the residence of the administrator, for the purposes of administration, place them in legal contemplation in the city or county of the Court exercising jurisdiction. The personal property, therefore, of an intangible nature not perma-

nently located elsewhere, such as bonds and stocks, must be deemed to remain within the jurisdiction of the Court pending the settlement of the estate, and be there liable to taxation. When distribution has been made, and the fact of its transfer has been communicated to the tax authorities, the administrator's or executor's liability to pay the taxes upon it of course ceases. That the place of administration as a rule is the situs of taxation, is recognized in section 8, Art. 11, Rev. Code. That section is: "The several registers of wills in this State shall annually, on or before the first day of March, return to the County Commissioners or Appeal Tax Court, a summary account of all property that shall appear by the records of the several Orphans' Courts to be in the hands of such executor, administrator or guardian as such; and all such property, if not before assessed, shall then be assessed; and every executor, administrator or guardian shall be liable to pay the taxes levied thereon, and shall be allowed therefor by the Orphans' Court in his accounts." The general principle is thus stated in 1 *Desty on Taxation*, 333: "The situs is at the domicile of decedent during settlement of the estate, and must be assessed to the one having the legal title." This proposition is laid down and illustrated in the cases, among others, of *Cornwall vs. Todd*, 38 *Conn.*, 443, in which the effect of the legal title as between trustees and administrators is considered; in *Stevens, Adm'r vs. The Mayor of Booneville*, 34 *Mo.*, 322, and *McGregor's Executors vs. Vanpel*, 24 *Iowa*, 429. In the last named case, DILLON, C. J., uses this explicit language: "The true view is, that the executors represent the decedent; and the personal property he leaves is, as a rule, to be assessed in the county of which he died a resident."

But while an executor is to be assessed in the city or county where administration is had with the personal property there situate, and that of an intangible nature not located permanently elsewhere; it is provided by sec.

88, Art. 75 of the Code that, " an executor may be such, either in the county where he resides, or where he obtained administration." Had appellant, therefore, been sued in Baltimore County his liability would still have been to the City of Baltimore for taxes. This right to sue in either place is but to facilitate recovery against an executor, and does not affect the nature of the demand.

The defendant in his second prayer, which was denied, seeks to release from liability certain stocks of the City of Philadelphia, part of the public debt of that city, which were exempted from taxation of every kind by the laws of the State of Pennsylvania, authorizing said debt to be so contracted by said municipal corporation.

As the laws of Pennsylvania are not of binding force upon the taxing power of other States, the warrant for such exemption, as appellant claims, must be found, if at all, within the terms of the statutes of Maryland defining what property shall be taxable, and what property not. The terms of our statute do not sustain such a claim. By the Act of 1878, chap. 413, sec. 2, "All shares of stock, or shares in any bank other than a national bank, or in any company or corporation, incorporated by or located in, and doing business in any other State, or in any territory or country, owned by residents of this State ; all bonds made by any State, which were not exempted from taxation by the law of said State authorizing the issue of such bonds; all bonds issued by any territory or by any corporation shall be liable to be valued to the respective owners thereof, and to be assessed."

It is a settled rule, in regard to taxation, that exemptions are strictly construed, and the only exemption clearly provided by the expressed terms of the Act just cited, applies exclusively to the bonds of *a State*, which, by the law authorizing their issue, are exempted from taxation. The comity and other reasons underlying the policy dictating this exemption, are not strictly applicable to

foreign, municipal or other corporations, whose credit is not identified with that of the State, which, for certain reasons and objects of a special and local nature, may be disposed to aid them by granting immunity from taxation within its own borders.

The remaining point to be considered is the motion of the defendant in arrest of judgment, because of an alleged fatal misjoinder of counts in the declarations. The misjoinder is said to consist in uniting a count for taxes due from the testatrix with a count for taxes due from the appellant on the same property while in his hands as executor pending the settlement of the estate. The appellant contends that different judgments are applicable to these counts. The assumpsits declared on, however, are not upon express contracts made respectively by the testatrix, and the executor in his personal capacity; but are in each case assumpsits implied by law from a legal obligation relating directly to the property itself.

In suits against executors or administrators, as such, a count upon an indebtedness or promise arising in their representative capacity, may be joined with one upon the indebtedness or promise of the decedent, provided the consideration of the demand spring from or is connected with the estate itself. Instances of such joinder are supported in *Malin, et al., Ex'rs vs. Bull,* 13 *Serg. & Rawle,* 441; *Howard's Adm'rs vs. Powers,* 6 *Ohio,* 92; *Carter vs. Phelps' Adm'rs,* 8 *Johnson,* 343; *Hapgood vs. Houghton, Ex'r,* 10 *Pickering,* 154, and in many other cases. The counts against the executor in these suits were not for a *devastavit,* or an express undertaking in his individual character, but for the discharge of a legal obligation, pertaining to the estate, in his representative capacity. We find no error, therefore, in the judgments entered.

Being clearly of opinion that the Court of Common Pleas was correct in its various rulings, and in the

verdicts and judgments rendered in both cases, the judgments must be affirmed.

*Judgments affirmed.*

(Decided 7th May, 1885.)

