(Decided February 18th, 1897.)

---

# WILLIAM W. BALDWIN, Guardian of COLUMBUS C. BALDWIN *vs.* THE COUNTY COMMISSIONERS OF WASHINGTON COUNTY, &c.

*Taxation—Guardian and Ward—Guardian Appointed in this State Liable to Taxation on Ward's Property Although Both Guardian and Ward are Non-Residents—Guardian Liable to Taxation Until Settlement of Final Account, Although Ward is of Age.*

When a guardian is appointed in this State the property of the ward held by him is subject to taxation under the Code, Art. 81, sec. 9, in the county where he was appointed, although both guardian and ward reside in another county.

The Code, Art. 81, sec. 9, provides that every Register of Wills shall annually return to the County Commissioners, &c., an account of all property appearing by the records of the Orphans' Court to be in the hands of each executor, administrator or guardian, as such, and all such property shall then be assessed, and every guardian, &c., shall be liable to pay the taxes levied thereon.   *Held*, that under this

provision the office of guardian is fixed at the county where he is appointed and the property is taxable there, although either the guardian or the ward or both may reside in another county or in another State.

The fact that a ward comes of age before the return is made by the Register and the tax is levied, does not relieve the property from taxation when there has been no final settlement of the guardianship account in the Orphans' Court.

Although a guardian may make a settlement with his ward after the latter is of age out of Court so as to relieve his bond from suit, yet under Code, Art. 93, sec. 192, it is the duty of the guardian to make the settlement a matter of record in the Court which appointed him. Until such account is there settled it is the duty of the Register to report the property liable to taxation, and the duty of the commissioners to assess it, and the duty of the guardian to pay the taxes thereon, although the ward may be of age.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.), dismissing the bill of complaint filed by the appellant.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

*Charles A. Boston* (with whom were *Wm. Woodward Baldwin* and *Charles Gambrill Baldwin* on the brief), for the appellant.

The Court below held that the facts presented clearly disclosed the power and duty to levy and collect the tax; and, further, that the complainant was guilty of neglect, and therefore not entitled to relief.

The appellant distinctly contends and urges as the ground of his appeal:

1. That the State of Maryland has no power to levy the tax in question.

2. That no tax has been imposed by the State of Maryland on the property in question.

3. That the Legislature is prohibited from levying and collecting the tax in question by constitutional provisions.

4. That the complainant has in nowise forfeited his right to the tender consideration of a Court of Equity, and is entitled to relief against the unlawful tax in this suit.

5. That the property taxed was in no sense in the hands of the guardian as such when taxed, and was therefore not taxable.

The facts agreed upon are: (*a*). That the property taxed is entirely *personalty* and consists of stocks and bonds of corporations organized and located *outside* of the State of Maryland of the aggregate value of $44,856. (*b*). That the *physical location* of the certificates of stock and the bonds is not in the State of Maryland; the only issue is as to the *legal situs;* the bill alleges that the property levied upon and assessed was composed entirely of personalty, and no part thereof was within the State of Maryland; the answer merely contends for a *legal situs* in Washington County by reason of the facts admitted by the bill as to the administration of the guardianship in Washington County. (*c*). That the tax is levied in pursuance of returns of the Register of Wills of Washington County in his annual returns for 1893 and 1894 of the property in question as property in a guardian's hands liable to taxation. (*d*). That the property assessed is in the hands of the plaintiff, who was appointed guardian of Columbus C. Baldwin on August 21, 1891, by the Orphans' Court of Washington County, and consists of property bequeathed and distributed to his ward by a testator and an intestate whose estates were settled in the Orphans' Court of Washington County many years since. (*e*). That Columbus C. Baldwin, the ward, arrived at full age prior to the Register's returns aforesaid, and prior to the assessment and levy of the taxes in question; that he resides in New York State; that he has not resided in the State of Maryland during the past twenty years, and he was a resident of New York and not of Maryland at the time of each of the returns, assessments and levies aforesaid. (*f*). That Wm. Woodward Baldwin, the guardian, resides in New York, has not resided in the State of Maryland during the past six years, and that he was a resident of New York and not of Maryland at the time of each of the returns, assessments and levies aforesaid.

To offset these facts and support the contention that the tax is proper, the defendants adduce the following facts:

(*g*). That certain estates were settled in the Orphans' Court of Washington County in 1879 and 1880, of which the said ward, Columbus C. Baldwin, was distributee and legatee; that one Christopher C. Balwin was appointed guardian of said Columbus C. Baldwin by said Court and accounted thereto for said distributive shares and legacies with more or less regularity thereafter; that one Rigdon W. Baldwin succeeded said Christopher C. Baldwin as guardian, and likewise filed his accounts in said Court, and that the plaintiff succeeded R. W. Baldwin by appointment of the same Court, and that the trust has been continuously in said Court since 1879.

1. The question whether the exercise of the taxing power in any particular instance is legitimate can best be ascertained in any case in answer to three questions: (1) Is there property in the State? (2) Is the owner within the State? (3) Is there business within the State? If any of these three questions can be answered affirmatively, then the basis for taxation exists; if all must be answered negatively, then any attempt to tax is arbitrary and inexcusable, and any attempt to enforce such tax is an attempt to take property without due process of law. *N. C. Ry. Co.* v. *Jackson*, 7 Wall. 262; *N. Y., &c., Co.,* v. *Penn*, 153 U. S. 628; *Tappan* v. *Merchants' Bank*, 19 Wall. 490; *Gloucester Ferry Co.* v. *Penn*, 114 U. S. 208; *People* v. *Equitable Trust Co.*, 96 N. Y. 393; *Appeal Tax Court* v. *Patterson*, 50 Md. 366; *Appeal Tax Court* v. *Rice*, 50 Md. 396; *Mayor* v. *Hussey*, 67 Md. 112; *State Tax on Foreign Held Bonds*, 15 Wall. 300.

In this case neither the property nor the owner is within this State, but it seems that the learned Judge below regarded the business as being in this State. He justifies his decision by a reference to *Cooley on Taxation*, ch. 12; but it will be noted that Cooley refers specifically to a trust fund in charge of a Court; when (on p. 377, 2d ed.) he

comes to speak of *guardianship property* he does not apply that principle nor intimate that *guardianship property* is to be or can be taxed away from the residence of either guardian or ward, and away from the place of its actual location ; on the contrary, all that he says would indicate the opposite. That this present fund is not a trust fund in *charge* of a Court we have made apparent by our argument under Point V below.

The Judge below relied on *Bonaparte* v. *The State*, 63 Md. 465, but there is a distinction between the relation of a guardian to a ward's estate, and that of an executor to a decedent's estate, a distinction which is readily seen on an examination of *State use of Henderson* v. *Henderson*, 54 Md. 344. Even in *Bonaparte* v. *The State*, this Court did not go so far as to say that the State of Maryland could tax foreign property of a non-resident executor. We are considering the question of the power and not of the policy of the State ; in the *Bonaparte case* the State had the power to tax Bonaparte, and had a statute which this Court interpreted to show the intention to tax him in the domicile of the decedent ; in this present case we are dealing not with the exercise of the State's power within its jurisdiction, but with the entire want of power. Our case in its facts is more nearly parallel too with *Dallinger* v. *Rapello*, 14 Fed. Rep. 32.

The tax now attempted to be levied is not an occupation, business or privilege tax, because it is not levied as such, as will most fully appear under the next point discussed. It is distinctly justified as a *property* tax, and, therefore, it is not a tax on business. It would be an immense stretch of the term business to hold that accountability through a Court, of which debtor and creditor may or may not avail themselves, is business ; on that contention every citizen of the United States might be taxed on his property, because the Courts of Maryland are open to him. Such a contention is so absurd as to need no refutation. The sole relation of the guardian to the adult ward has already been determined in Maryland (*State use of Henderson* v. *Hender-*

*son*, 54 Md. 344; *Green* v. *Johnson*, 3 G. & J. 396) to be that of debtor and creditor; the rights of debtor and creditor can be asserted anywhere that the debtor can be found (*Green* v. *Johnson*, 3 G. & J. 396; *Schouler Domestic Relations*, section 382*a*) they would naturally in this case be asserted and enforced in New York; if the ward chose he could resort to the sureties on the bond, but that is a remedy to be sought in the residence of the sureties.

It is true, possibly, that the State of Maryland might, if it did not discriminate between residents and non-residents, prescribe a tax to be paid by guardian or ward as a condition precedent to the enforcement of a remedy in its Courts, but that would be a privilege tax, which need not be paid if the privilege were not sought; and the best answer to the suggestion as to what the State might do is that it has not done it, and this is in no wise a privilege tax, but distinctly a property tax. Neither Wm. Woodward Baldwin nor Columbus C. Baldwin is engaged in any occupation or business in the State, nor has availed himself between the date of the return, assessment and levy of the illegal tax and the date of the issues herein of any privilege accorded to them by the State of Maryland; so that the basis of a privilege or business tax does not exist.

2. The Register returned the *property* of the plaintiff as liable to taxation as part of the *annual returns* required by law from the Register to the County Commissioners, and the County Commissioners have placed said estate on the levy list of the county, and in the hands of the collector, they having assessed said *property* for State and county taxes.

It is entirely apparent from the pleadings, statement of facts and opinion of the Court below, that the law upon which the defendants justify the tax is to be found in Article 81 of the Code, which reads as follows: Sec. 9. "The several Registers of Wills in this State shall annually, on or before the first day of March, return to the County Commissioners or Appeal Tax Court, a summary account of all property that shall appear by the records of the several

Orphans' Courts to be in the hands of each executor, administrator or guardian as such; and all such property, if not before assessed, shall then be assessed; and every executor, administrator or guardian shall be liable to pay the taxes levied thereon, and shall be allowed therefor by the Orphans' Court in his accounts."

Section 9, however, is not to be construed as if it stood alone; it is true that it is broad enough in its terms, standing alone, to include all property whatsoever that shall appear by the records to be in the hands of each guardian as such, and to authorize such property to be *assessed*, but there is no authority in this section for the *levying* of taxes thereon—that authority must be looked for in some other section of the law.   Section 9 is found under that subdivision of the law which is entitled "*mode of valuation and assessment*," and has to do only with the method of ascertaining taxable property; it adds nothing whatever to the taxable property, nor does it describe the mode of valuation; these matters are regulated by other sections.   The law agreeably to which the assessment must be made before the tax can be levied is Code, Art. 81, secs. 2 and 6.

. The inevitable conclusion from these provisions is that no authority to levy a tax is given save an assessment be made *agreeably to law* and according to a *method of valuation prescribed* in this Code; that the only *prescribed* method of valuation for assessment applies to property in the county *liable to taxation*, and that the only property *liable to taxation*, as that liability is prescribed by the Legislature, is property *owned by residents* of the State or property *within the State*.

In *Latrobe* v. *Mayor*, 19 Md. 13, the city of Baltimore was precluded from taxing a mortgage debt as in Baltimore City, when the mortgagee, who was a trustee for residents of Baltimore City, was resident in Howard County.   The Court held that under the tax laws the legal owner only was taxable, and that at his residence, and that without residence of the legal owner in the city there was no jurisdic-

tion to tax in the city the mortgage debt, although it was secured by real property in the city. By parity of reasoning, where the legal owner's residence is wholly without the State, debts owing to him are not taxable within the State. Section 9 gives no new authority to the assessor, but merely affords a means of getting the information required by section 6. It requires the assessor to assess, but prescribes no method of valuation. It is section 6 which prescribes the method of valuation, to-wit, of property in the country *liable to taxation.* Section 2 prescribes the property liable to taxation, and that is property owned by residents of the State and property within the State. No other property has been declared by the Legislature to be liable to taxation, and the property now in question is neither owned by residents of the State nor is it within the State, so that it is not liable to taxation, and not being declared to be liable to taxation it is exactly on the same footing with property specifically exempted by section 4 and by section 5.

If section 9 were to be construed by itself, property exempt by section 4 and section 5 would still have to be assessed when it shall appear to be in the hands of guardians. It surely was never intended by the Legislature that property otherwise expressly exempted from taxation or otherwise not liable to taxation should become liable instantly when it passed into the hands of guardians. The very statement of this proposition makes it apparent that the Legislature intended that the Register of Wills should simply be the means of ascertainment of property by other law designated as *liable to taxation*, and that if the property reported by him would be otherwise liable to taxation, then it should be assessed and levied upon ; but that, if not liable to taxation as property, the showing of its existence upon the Register's return imposes no additional liability upon it. This must be so, otherwise it would impose upon special classes in the community—to-wit, creditors, devisees, legatees and wards—an unequal burden of taxation, and these classes would be compelled to pay a property tax not levied

on the same property in the hands of others, which in itself
would be a violation of a principle explicitly established by
the people of Maryland (Declaration of Rights, Art. 15).

3. Art. 3, sec. 51 of the State Constitution is as follows:
" The personal property of *residents of this State* shall be
subject to taxation in the county or city where the resident
*bona fide* resides for the greater part of the year, for which
the tax may or shall be levied, and *not elsewhere*, except
goods and chattels permanently located, which shall be
taxed in the city or county where they are so *located*."

The personal property of a *resident of the State* is to be
taxed in the county of his residence and *not elsewhere*, ex-
cept goods and chattels *permanently located*, which shall be
taxed where located. These goods and chattels are not
permanently located, they would therefore, if the property of
a resident of the State, be taxable in the county of his resi-
dence and *not elsewhere ;* the only possible excuse for tax-
ing them, therefore, in a place apart from the residence of
the owner, is the *non-residence* of the owner.

In the first place it may be doubted whether the Legis-
lature has under the Constitution the power to tax non-resi-
dents upon personal property not permanently located within
the State, in view of section 51 of the Constitution and of
Article 15 of the Declaration of Rights, on the theory that
in a Constitution the enumeration of certain principles of
action excludes non-enumerated principles ; whether in fact
the Constitution by enumerating the principle of taxation of
residents of the State, and the Declaration of Rights by
enumerating residents of the State and property therein as
proper subjects of taxation, do not exclude the levying of
taxes as such upon the property of non-residents not located
in the State, even though by some chance the State may have
some means at hand of enforcing the exaction.

But, whatever may be the power of the Legislature over
non-residents so far as the State Constitution is concerned,
that Constitution, by securing to residents the privilege of
taxation upon their personal property, not personally loca-

ted, in the place of their residence and not elsewhere, neces-
sarily precludes the Legislature from imposing on a non-
resident who is a citizen of the United States, any burden
which it could not impose upon a citizen of Maryland. Art.
IV, sec. 2, subd. 1 of the Constitution of the United States,
says: " The citizens of each State shall be entitled to all
privileges and immunities of citizens in the several States."
Art. XIV, amendments of the Constitution of the United
States, says: " No State shall make or enforce any law
which shall abridge the privileges or immunities of citizens
of the United States   *   *   *   nor deny to any person
within its jurisdiction the equal protection of its laws."

These two provisions of the National Constitution pre-
clude Maryland from having one rule of liability to taxation
for citizens and another for citizens of other States, and one
rule of liability to taxation to persons who are non-residents
and another for residents.

If any citation of authorities on these provisions be neces-
sary, we have them in the case of *Yick Wo* v. *Hopkins*, 118
U. S., 356, and the cases there cited ; particularly pertinent are
the conclusions stated by MATTHEWS, J., as follows : " The
provisions (of the 14th Amendment) are universal in their
application to all persons within the territorial jurisdiction,
without regard to any differences of race, of color, or of
nationality, and the equal protection of the laws is a pledge
of the protection of equal laws."

So that William Woodward Baldwin and his ward, being
conceded to be non-residents of Maryland, are not liable to
any tax in Maryland from which a resident of Maryland
would be exempt ; a resident of Maryland would not be
liable in Washington County upon personal property not
permanently located there unless he resided there ; the Bald-
wins, therefore, are not liable there unless they reside there,
and it is conceded that they do not reside there.

*H. Kyd Douglas* (with whom was *Wm. Kealhofer* on the
brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

A bill in equity was filed by the appellant seeking to restrain the collection of certain taxes claimed by the appellees to be due. The appellees having answered, the cause was submitted to the Court below on bill and answer and an agreed statement of facts. Those material to the questions involved in this appeal are that on November 15, 1879, Christopher C. Baldwin was appointed guardian of Columbus C. Baldwin by the Orphans' Court of Washington County, and he settled a number of accounts in that Court—the last on April 15, 1884, showing a balance in his hands of $49,340.09. Of that amount $11,700.41 were received by the guardian as his ward's distributive share from the estate of James Dixon Roman, Jr., which was settled in the Orphans' Court of Washington County, and $32,285.44 from the estate of Louisa M. Roman, which was also settled in that Court. The record is silent as to the balance, which may have been made up from the income, as it was probably not all used in the support of the ward, but that is immaterial. Christopher C. Baldwin was succeeded by R. W. Baldwin, who settled six accounts, and his administrator on January 19, 1892, settled another, showing a balance of $57,343.50 in his hands. He having died the appellant was appointed guardian in his place on August 21, 1891, and he settled an account September 23, 1892, showing a balance of $60,059.29. It is admitted that the appellant and his ward both reside in New York, and were residents of that city at the time the returns were made by the Register of Wills, as hereafter referred to, and when the taxes in controversy were levied, and that the ward became twenty-one years of age on January 6, 1893. On the first day of March, in the years 1893 and 1894, the Register of Wills made his returns to the County Commissioners of Washington County, showing that the sum of $44,856.00 was in the hands of this guardian liable to taxation and the levy was made on the first day of June in each of those years. It is also admitted that the property

and estate consists of stocks and bonds of corporations organized and located outside of the State of Maryland of the aggregate value of $44,856.00. The bill was filed February 12, 1895, and on February 15, 1895, the appellant settled another account in the Orphans' Court showing a balance due his ward of $63,381.56, but still did not settle a final account.

We are thus called upon to determine whether this property is liable to taxation in Washington County, notwithstanding the non-residence of both guardian and ward. How far the fact that the ward was of age when the returns were made and the taxes levied can affect the question will be considered later.

Section 9 of Art. 81 of the Code provides that " The several Registers of Wills in this State shall annually, on or before the first day of March, return to the County Commissioners, or Appeal Tax Court, a summary account of all property that shall appear by the records of the several Orphans' Courts to be in the hands of each executor, administrator or guardian, as such ; and all such property, if not before assessed, shall then be assessed ; and every executor, administrator or guardian shall be liable to pay the taxes levied thereon, and shall be allowed therefor by the Orphans' Court in his account," etc. The returns of the Register of Wills of Washington County were made under the provisions of this section and the levies were made by the County Commissioners on the property thus returned. It being practically conceded that the property assessed is of such character as would be liable to taxation if the guardian and ward were residents of Washington County, we will not stop to discuss that question. It must, of course, be admitted that the *situs* of property of this kind, for the purpose of taxation, is ordinarily at the domicile of the owner, but the Legislature has the power to fix a different *situs*, provided of course there be no conflict with some provision in the Constitution. I *Desty on Taxation*, 97 ; *Cooley on Taxation*, 373.

We have in this State some statutes which do determine where property shall be deemed to be situate for the purposes of taxation. For example, section 131 of Art. 81 of the Code provides where the stock of certain domestic corporations owned by non-residents shall be deemed to be situate. So, by section 9 of Art. 81, above quoted, the Legislature has fixed the place where personal property in the hands of the guardian shall be taxed. When it requires the Register of Wills to make the returns to the County Commissioners, it means of course that the Register of Wills of each county shall make the returns to the commissioners of his county, and it provides that " all such property, if not before assessed, shall then be assessed," and " every executor, administrator or guardian shall be liable to pay the taxes thereon." It does not say every guardian who is a resident of this State, or every guardian whose ward is a resident of this State, but the language used is at least broad enough to apply to every guardian who has been appointed as such in this State, and includes all property of such guardian—that is, of course, all property of such character as is taxable in this State. It fixes the situs of the property in the county or city where the guardian was appointed and it matters not where the person who is guardian may reside. The office of guardian, so to speak, is fixed at the county where the appointment is made. If that be not so, then if this ward was a resident of Washington County, his personal property would escape taxation there because his guardian lived in New York. That would seem to be contrary to the manifest object and intention of the section of the Code above quoted.

In the case of *Bonaparte* v. *State et al.*, 63 Md. 465, this same section was under consideration, and this Court held that although Mr. Bonaparte, the executor of Mrs. Patterson, lived in Baltimore County, yet he was liable to Baltimore City for taxes on bonds and stocks of his testatrix, because letters testamentary had been granted to him by the Orphans' Court of Baltimore City. It was there said in

answer to the suggestion of the executor, that because he
was a resident of Baltimore County he was taxable there
and nowhere else, by reason of the legal title to the intang-
ible property being in him; " that he held such legal title is
true; but he held it in the special character of an officer of
the law for the specific and temporary purpose of the ad-
ministration of the property under the supervision and direc-
tion of the Court from which he received letters testamen-
tary.   The domicile of the testator when living determines
the *situs* of his personal property of an intangible nature,
not permanently located elsewhere, for purposes of taxation,
and his place of domicile at the time of his death determines
the place of administering his estate.   The *situs* of the per-
sonal property, generally speaking, and the residence of the
administrator, for the purposes of administration, place them
in legal contemplation in the city or county of the Court
exercising jurisdiction.   The personal property, therefore,
of an intangible nature, not permanently located elsewhere,
such as bonds and stocks, must be deemed to remain within
the jurisdiction of the Court pending the settlement of the
estate, and be there liable to taxation.   When distribution has
been made, and the fact of its transfer has been communi-
cated to the tax authorities, the administrator's or executor's
liability to pay the taxes upon it, of course, ceases."   The
Court then quoted the section of the Code above referred
to.   Now, if it be true that the *situs* for taxation of prop-
erty in the hands of a resident executor (and of course the
same must apply to an administrator or guardian) is where
he was appointed and not where he resided, how can it be
consistently said in this case that the property cannot be
subject to taxation because the guardian resides beyond the
State, especially when we remember section 51 of Art. 3 of
the Constitution, which says that " The personal property
of *residents of this State* shall be subject to taxation in the
county or·city where the resident *bona fide* resides for the
greater part of the year for which the tax may or shall be
levied, and not elsewhere, except goods and chattels per-

manently located, which shall be taxed in the city or county where they are so located." There was much more reason for contending that the executor, Mr. Bonaparte, who was a resident of Baltimore County, could not be taxed in Baltimore City under that constitutional provision, than there is for the contention in this cas, as there is no such provision applicable to non-residents, yet this Court held that in contemplation of law Mr. Bonaparte *as executor* had his residence where he was appointed executor, and it was not material where he, as an individual, in point of fact lived.

In contemplation of our statute, the officer of the law known as the guardian of Columbus C. Baldwin is in Washington County for the purpose of dealing with, accounting for and holding the property of his ward. The individual holding that office may be domiciled in that county or in New York, but the law does not concern itself about that.

There are a number of provisions in our testamentary laws for the appointment and control of guardians by the Orphans' Courts of this State. They not only provide for the appointment of guardians of resident infants, but by section 203 of Art. 93 of the Code express provision is made for the appointment of guardians of non-resident infants who have no guardians where they reside, but have property in this State. Can it be doubted that such guardians are subject to the same control by the Orphans' Courts of this State as those whose wards reside here? They are required to give bond with security in the same manner as if the infants resided in this State, and the wards' property is entitled to the same protection as that of resident wards. Once in each year, or oftener if required by the Court, the guardian must settle an account of his trust with the Orphans' Court. The Court is authorized to direct how the money of the ward can be invested, and when investments are made under certain provisions of the Code they can only be transferred under the orders of the Court. No guardian can sell any of the property of his ward without an order of the Court appointing him, and other provisions might be cited which show that

the policy of our testamentary laws is to keep the personal property of all wards, whose guardians are appointed by the Orphans' Courts of this State, within the control and supervision of those Courts. Whatever may be true in actual practice, the theory of the law is that the personal estate of the ward is where the guardian is appointed, and not where the guardian or ward may be. In case of non-resident infants, the jurisdiction of the Orphans' Court to appoint depends upon the property being within this State. Our statute makes liberal provisions for foreign guardians obtaining money, etc., due their wards in this State, and a guardian could have been appointed in New York for young Baldwin, who could have had the estate in the hands of the guardian here transferred to him under our construction of the statute in *Bernard* v. *Trust Company*, 80 Md. 118. If the appellant did not want to pay taxes in Washington County as other guardians appointed by the Orphans' Court of that county are required to do, he could have had a guardian appointed where the ward resides, but so long as he remained guardian here he was required by the express terms of the statute, as we understand its meaning, to pay taxes on the property in his hands liable to taxation. When for convenience or other causes a guardian is appointed in this State for a non-resident infant, who may thereby have the protection and care of one of our Orphans' Courts from year to year during his minority, it is certainly no hardship to require his estate to pay taxes on such property as the guardian of a resident ward must pay. So if we view this case merely from an equitable standpoint, we fail to find any good reason why guardians of non-resident infants should occupy the time of our Orphans' Courts, at the expense of the public, and yet not pay such taxes as the guardians of resident infants must pay. But be that as it may, we are of the opinion that by the letter as well as the spirit of our statute, the *situs* of this property was fixed in Washington County, and it was taxable there.

The decisions of this Court in reference to the taxation

of personal property in the hands of trustees, referred to by the appellant, do not in any way conflict with the views here expressed. To adopt the appellant's construction, we must not only ignore the very terms of the statute above referred to, but reject the reasoning of the case in 63 Md. 465, *supra,* which is certainly applicable to if not conclusive of this case.

It only remains then to determine whether the fact that the ward of appellant was of age when the returns were made by the Register and the levies made by the County Commissioners relieves him from liability. It is not alleged in the bill, or even suggested in the statement of facts, that there had been any settlement between the guardian and ward out of Court, but on the contrary it is admitted that although the ward became of age on January 6th, 1893, the appellant did settle an account in the Orphans' Court of Washington County, February 15th, 1895, three days after the bill was filed, showing a balance due his ward of $63,881.56, and it is further admitted "*that no final account has been settled in said guardianship.*" Section 192, of Art. 93 of the Code provides that " on a ward's arrival of age, or on the marriage of a female ward, the guardian shall exhibit a final account to the Orphans' Court and shall deliver up agreeably to the Court's order, to the said ward, all the property of said ward in his hands, including bonds and other securities ; and on failure his bond may be put in suit and he shall be liable to attachment and fine not exceeding three hundred dollars," etc. Whilst it may be true that the ward may settle with the guardian out of Court and thereby be precluded from suing the bond, there is no evidence in this case that any such settlement has been made, but if there was it is manifest that there is a duty resting on the guardian to make a settlement in Court, or at least to make the settlement a matter of record in the Court which appointed him. In the case of *State* v. *Henderson,* 54 Md. 332, it was distinctly said that it was the duty of the guardian to settle a

final account in the Orphans' Court when the ward arrived at age, and if we attribute the ordinary meaning of words to the language used in the section of the Code last cited, there would seem to be no room to doubt that it is not only the duty of the guardian to settle a final account with his ward, but to settle it in the Orphans' Court. As the appellant did not settle such an account it was the duty of the Register of Wills to report the property in his hands liable to taxation, the duty of the Commissioners to assess it and of the guardian to pay the taxes thereon. It was said in *Bonaparte's case*, "When distribution has been made and the fact of its transfer has been communicated to the tax authorities, the administrator's or executor's liability to pay the taxes upon it of course ceases," which, if we substitute " guardian " for " administrator or executor," is very applicable to this case. If this be not required the assessable basis of taxation is liable to be constantly disturbed after the taxes are levied for the current year. But if the mere fact that the ward has arrived at age, *ipso facto* relieves the property from taxation in the hands of the guardian, although he has not settled a final account and delivered up the property to the ward, then property that is taxable may escape taxation by reason of the failure of guardian to discharge their duties, as until the tax authorities are made aware of the fact that the wards are of age, they would continue to assess the property to the guardians. Even if guardian and ward both reside in this State the ward would not be assessed because the property had not been delivered to him, and according to the appellant's contention, the guardian could not be, because the ward was of age. Such a construction of the law would beget another method, already unfortunately plentiful, of evading taxation—not that we mean to intimate that there was any such effort in this case, but only to say what might be done if the appellant's contention is correct.

There is another reason why the appellant should not be granted relief. The record does not disclose what

amounts the Register of Wills had returned as in the hands of appellant prior to the year 1893, but it does show that the last account settled by him prior to his filing the bill of complaint was in September, 1892, and the Register doubtless made up his returns from that account. As the guardian knew when the ward would be of age, and is presumed to have known that the Register was required to make his returns to the County Commissioners he had every opportunity to appear before them to have the property stricken off, if it was no longer taxable. It was held in the case of *County Commissioners* v. *Clagett,* 31 Md. 210, that when the property is allowed to remain on the tax books of the county after alienation, assessed to the alienor, and he fails to avail himself of the means provided by law to have the assessment corrected, he is liable for the taxes on such property. Here the appellant seeks the aid of a Court of Equity, but does not allege or claim that he had ever applied to the County Commissioners for relief, or that it was refused him. He simply bases his case on the facts that he and his ward are non-residents and that the ward was of age. Although it is true that a Court of Equity will prevent the collection of an illegal tax in a proper case, it would be going to a great length to interfere under the circumstances disclosed by this record. As already said, there is not even an allegation that the property has been transferred to the ward, but on the contrary the evidence is " that the said trust has been continuously in the Orphans' Court of Washington County from the year 1879, down to and subsequent to the filing of the bill of complaint in this case." There was, therefore, in point of fact no actual alienation of the property, but if there had been it was the duty of the appellant to appear before the County Commissioners and satisfy them of it, or else settle his account and thereby enable the Register of Wills to omit the property from his returns. The bill alleges that the return was " part of the annual return required by law to be made by said Register to the said County Commissioners "—thus

showing that the appellant not only was presumed to know but did actually know the requirement of the law on the subject.   He could not remain passive until the authorities were about to enforce collection of taxes and then seek the aid of a Court of Equity.   Some other questions have been suggested, but we will not discuss them, as they are unnecessary for the purposes of this decision, and the decree below must be affirmed for the reasons we have given.

> *Decree affirmed with costs to the appellee.*

(Decided February 18th, 1897.)
ROBERTS, J., dissented.