COMPTROLLER OF THE TREASURY *v.* HILDA ANN
RUSSELL, Pers. Rep. of the Estate
of Charles G. Jackson

[No. 67, September Term, 1978.]

*Decided December 20, 1978.*

*Gerald Langbaum, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*J. Robert Carey* for appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal requires that we decide whether the orphans' courts of this State have the authority to adjudicate the validity of tax assessments made by the Comptroller of the Treasury following his determination that State income taxes are due by a decedent and must be paid by his estate. Although we granted certiorari here to review the propriety of an order of the Orphans' Court of Montgomery County disallowing petitioner Comptroller of the Treasury's claim against the estate of Charles G. Jackson for unpaid Maryland income taxes, we do not reach that issue because we have concluded that the orphans' court had no power to enter the determination it did and, accordingly, we will vacate its order disallowing the tax claim.

The record before us indicates that on September 26, 1975, on the basis of information given to the State by the United States Internal Revenue Service, a letter was forwarded to

Mr. Jackson notifying him that, according to the comptroller's records, he had failed to file Maryland personal income tax returns for the years 1969, 1970, and 1971. Mr. Jackson apparently did not reply to this notice and subsequently, on July 25, 1977, the comptroller, unaware that Mr. Jackson had died a month earlier, mailed another letter addressed to him giving the taxpayer notice of the assessment of a tax deficiency against him in the amount of $2,169.32 and apprising the taxpayer of his right to appeal the assessment to the Maryland Tax Court within thirty days. Thereafter, upon being informed of Mr. Jackson's death, the comptroller filed a "Proof of Debt" claim with the orphans' court on August 23, 1977, seeking payment of the taxes from the Jackson estate. Approximately one week later respondent Hilda Ann Russell, acting in her capacity as personal representative of the Jackson estate, rejected the State's claim as not being properly assessed. A hearing on the matter was convened on March 21, 1978, at which time the orphans' court disallowed the claim on two alternative bases: 1) that the word "taxpayer," as defined by the legislature, Md. Code (1957, 1975 Repl. Vol.), Art. 81, §§ 2, 279, is a term of art placing liability for the payment of income taxes only upon the individual taxpayer and not upon his estate and 2) although the General Assembly has provided "[i]n the case of a failure to file a return . . . the tax may be assessed at any time," *id.* § 309 (c) (2), the collection of taxes in a situation such as is present here is barred by Md. Code (1957, 1975 Repl. Vol.), Art. 81, § 212, that declares "[a]ll State, county or city taxes of every kind for which no other period of limitation is prescribed by this article shall be collected within four years after they shall have become due . . . ." [1] In so ruling, however, it is our view that the orphans' court overstepped the bounds of its authority.

---

1. Respondent also argues before this Court, as she did before the orphans' court, that the comptroller's effort to collect the alleged deficiency is precluded by the application of Maryland's Dead Man's Statute, Md. Code (1974, 1978 Cum. Supp.), § 9-116 of the Courts Article, and because the comptroller has not met his burden in showing that the tax returns were never filed. Our disposition of this case, however, makes it unnecessary that we discuss either of these issues.

As has long been declared by the General Assembly, 1798 Md. Laws, ch. 101, subchap. 15, § 20 (currently codified as Md. Code (1974), § 2-102 (a) of the Estates and Trusts Article), and recognized by this Court, *e.g., Hayman, Adm'r v. Messick,* 252 Md. 384, 388, 249 A. 2d 695, 697 (1969); *Crandall, Exec. v. Crandall,* 218 Md. 598, 600, 147 A. 2d 754, 755 (1959); *Scott v. Burch,* 6 H. & J. 67, 79 (1823), the orphans' courts of this State are tribunals of special, limited jurisdiction that can exercise only such authority and power as is expressly provided them by law.[2] Although neither of the parties nor the orphans' court questioned whether that judicial body had been given the power to rule on the validity of a tax assessment claim, our own research has revealed that nearly one hundred years ago this Court in *Bonaparte v. State,* 63 Md. 465 (1885), addressed the issue and decided Maryland's orphans' courts do not possess that authority. In *Bonaparte,* the executor of a will, having been presented with state and city personal property tax bills, refused to pay them and then defended suits instituted in Baltimore City's Court of Common Pleas to collect the taxes on the ground that no claim for the taxes had been filed in the orphans' court. After discussing several statutory provisions dealing generally with the payment of "claims" by the executor, Judge Ritchie, speaking for this Court, stated:

> The question thus arises, whether taxes constitute such claims as are within the contemplation of these sections. If they are of such nature as not to require authentication by the Orphans' Court, ... these sections cannot avail the [executor] in the present suits.
>
> These sections of the Code are under the general caption of "Debts." Are taxes properly comprehended in the use of that term? The word "debts," in its common signification, which is that in

2. The fact that circuit court judges in Montgomery and Harford Counties also sit as the judges of those counties' orphans' courts, *see* Md. Const., Art. IV, § 20, in no way expands the power of those courts beyond that expressly granted to any other orphans' court. Willoner v. Davis, 30 Md. App. 444, 448, 353 A. 2d 267, 270, *aff'd sub. nom.* Davis v. Davis, 278 Md. 534, 365 A. 2d 1004 (1976).

which we think the Code employs it, imports the moneyed obligation of a person incurred in his private capacity, or from his individual acts, and not such obligations as are imposed upon him by law in his public relations, or in common with all other citizens. As defined by this court in *Baltimore v. Greenmount Cemetery,* 7 Md. 517, [535 (1855),] the word "tax" means "a burden, charge or imposition put or set upon a person or property for public uses." And in Cooley on Taxation, 13, the distinction between taxes and debts is thus stated: "Taxes are not debts in the ordinary sense of that term, and their collection will in general depend on the remedies which are given by statute for their enforcement. Where no remedy is specially provided, a remedy by suit may be fairly implied, but where one is given which does not embrace an action at law, a tax cannot in general be recovered in a common law action as a debt. Taxes are not demands against which a setoff is admissible; their assessment does not constitute a technical judgment, nor are they contracts between party and party, either express or implied; but they are the positive acts of the government through its various agents, binding upon the inhabitants, and to the making and enforcing of which their personal consent individually is not required."

The scrutiny and approval of the Orphans' Court provided for by the Code as to claims made against estates of deceased persons are safeguards applicable and appropriate to claims essentially of a private nature, arising from individual transactions, and of which an administrator cannot be presumed to have knowledge. The merits or validity of private demands may well be inquirable into by the Orphans' Court, and its sanction of their amount be given or withheld as seems proper; but the exercise of such a supervision over claims for taxes, which are established by officers specially authorized to

impose and collect them, would constitute the Orphans' Court a tribunal to review the action of those conducting the revenue department of the State. The acts of such officers cannot depend upon the approval of the Orphans' Court for their validity, but derive their force as proceedings of functionaries clothed with public authority and responsibility for the discharge of their special duties. To devolve on the Orphans' Court the allowance and rejection of such claims would open for their determination the liability of the property assessed, the correctness of the rate and amount of taxation, and all kindred questions. [63 Md. at 470-71.]

*Accord, Parker v. Leighton,* 131 Md. 407, 419, 102 A. 552, 557 (1917); A. Bagby, *Maryland Law of Executors and Administrators* § 82, at 151 (2d ed. 1928). Thus, our predecessors concluded that because the orphans' court was without power to determine the validity of the assessment of the taxes, it was not proper that any dispute over that assessment be presented to it.

Apparently, other than a cursory mention in *Parker v. Leighton, supra,* the subject of an orphans' court's authority to determine the validity of tax assessments against a deceased has not been the subject of judicial scrutiny since *Bonaparte.* Further, an examination of legislative action relative to the matter reveals only one enactment that might even arguably vitiate or otherwise affect the *Bonaparte* ruling. That provision, section 317 of Article 81, declares:

Every tax imposed by this [income tax] subtitle, and all increases, interest and penalties thereon, shall become, from the time it is due and payable, a personal debt, from the person or persons liable to pay the same to this State, and shall be entitled to the same priority and collectible in the same manner as other State taxes are preferred and collectible under the provisions of this article. [Md. Code (1957, 1975 Repl. Vol.), Art. 81, § 317.]

While it might be asserted that by classifying income taxes due and payable as "personal debts" the legislature has indicated its intent to abrogate the distinction drawn in *Bonaparte* between taxes as a public charge or duty owed by citizens to their government and private debts due by one individual to another, we think closer analysis of this statute does not support this interpretation. It appears to us that section 317 was intended to deal only with the status of income taxes when they have become collectible, that is, after the validity of the assessment — the issue in this case — has already been finally established. Moreover, we think it unlikely that the General Assembly, which has consistently indicated its intention that orphans' courts not "exercise any jurisdiction not expressly conferred," Md. Code (1974), § 2-102 (a) of the Estates and Trusts Article, would statutorily overrule *Bonaparte* and increase those courts' authority in such a vague manner. Thus, section 317 has no effect upon the validity of the *Bonaparte* holding, but merely makes the normal collection procedure available to private judgment or lien creditors likewise available to the State for the collection of income taxes that have been legally determined to be due.[3]

In reaching the conclusion just expressed, we are not unaware of respondent's argument, which was accepted by the orphans' court as a basis for disallowing the comptroller's claim, that the personal representative is not a "taxpayer" within the meaning of the income tax subtitle. If this argument were valid, in light of *Bonaparte,* the respondent seemingly would not be able to challenge the comptroller's alleged deficiency in the Maryland Tax Court under section 309 (d) of Article 81. *See* Md Code (1957, 1975 Repl. Vol.), Art. 81, § 309 (d) ("taxpayer" dissatisfied with assessment may appeal to Maryland Tax Court). Respondent and the orphans' court, however, have read the definition of "taxpayer" too

---

3. Obviously, our determination here that the orphans' court has no power to decide the validity of an income tax assessment precludes any argument that the orphans' court is simply a forum that serves as an alternative to the Maryland Tax Court, an appeal to which is normally the exclusive avenue for contesting the validity of a tax assessment. *See* White v. Prince George's Co., 282 Md. 641, 650-51, 387 A. 2d 260, 266 (1978).

narrowly. First, we note that although Md. Code (1957, 1975 Repl. Vol.), Art. 81, § 279 (c) gives a somewhat restricted definition when it states, "[f]or the purposes of this [income tax] subtitle . . . : . . . (c) *"Taxpayer"* means any person required by this subtitle to pay a tax or file a report," this Court has recognized that for the purpose of determining who can appeal to the Maryland Tax Court pursuant to section 309, the broader definition of section 2 (11) applies. *Reiling v. Comptroller*, 201 Md. 384, 386, 94 A. 2d 261, 263 (1953). The section 2 (11) definition provides that "[a]s used in this [taxation] article: . . . (11) The word *'taxpayer'* shall include any person or persons paying or liable to pay any tax, or against whom any liability for taxes is claimed or asserted, or could be claimed or asserted, whether on his own behalf or on behalf of others . . . ." Md. Code (1957, 1975 Repl. Vol.), Art. 81, § 2 (11). After examining the statutory role and duties of the personal representative, we think it clear he is a "person . . . paying or liable to pay [income] tax . . . on behalf of" another and, therefore, a "taxpayer" within the meaning of section 2 (11) and section 309 (d). *See* Md. Code (1974), § 7-401 (j) of the Estates and Trusts Article (personal representative may pay taxes and assessments); *id.,* § 8-105 (a) (if assets insufficient to pay all claims, personal representative shall pay taxes and other claims due by decedent in the order enumerated in the statute). Thus, the proper avenue for contesting the assessment of income taxes here is by way of the Maryland Tax Court.

As the orphans' court lacked the power to adjudicate the dispute between these parties, its determination must be vacated and the case remanded so that the litigants here may pursue, in light of this opinion, any available remedy either may have.

> *Judgment of the Orphans' Court of Montgomery County vacated and case remanded to that court for such further proceedings as may be appropriate.*
>
> *Costs to be divided equally between the parties.*