# MARYLAND REPORTS.

CHARLES E. GRIFFITH and MARY E., his Wife, *vs.* WILLIAM H. H. PARKS, JAMES PARKS and JOSIAS S. PARKS.

*Liability of Sureties on a Guardian's Bond — Equity Practice — Evidence of general reputation, admissible to prove Insolvency.*

By an order of the Orphans' Court of Baltimore county, passed upon his own application, a guardian was directed to deposit the money of his wards (one of whom had attained his majority,) in a designated bank, in the names of his wards, and subject to the control of the Court. The same order directed that upon the guardian's filing in Court the proper evidence of such deposit, the register should prepare accounts allowing him for the sums so deposited, and that thereupon he should be released from all further liability as guardian. The money was deposited according to the order of the Court, but the accounts required by the order never were prepared. In less than two months afterwards, the Orphans' Court revoked the first order, and authorized the guardian to withdraw the money from the bank and invest it, in his own name, as guardian. On the same day, the guardian passed his first and only accounts, in which he charged himself with these moneys. He subsequently became insolvent. One of his sureties died insolvent. The only other surety being dead, his personal estate and a portion of his real estate having been exhausted in the payment of his debts, and the residue of his real estate having been sold in a cause pending in the Circuit Court of Baltimore city, and the proceeds being in the hands of the trustee, the wards of the guardian interposed by petition in this cause, asking that their claims against the guardian be satisfied out of this fund. HELD:

1st. That the sureties were not released from liability by the deposit of the money in bank in pursuance of the first order of the Orphans' Court.

2d. That the wards properly proceeded by petition, instead of by original bill.

3d. That it was competent to prove the insolvency of the guardian by evidence of general reputation.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Court below, passed upon petitions filed by the appellees, in the case of *Taylor vs. Griffith and others,* allowing the claims of the petitioners, and directing the auditor to state an account between the several parties, in accordance with the principles contained in the opinion accompanying the order, and also from the order ratifying the report and accounts of the auditor filed pursuant to the first order. The case of *Taylor vs. Griffith, et al.,* was an amicable suit among the heirs and devisees of John Burns for the sale of the residue of his real estate, for the payment of a certain charge thereon, and for distribution of the proceeds of sale among those entitled. The facts of this case are sufficiently set out in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*William Rowland* and *John Carson,* for the appellants.

*William S. Keech* and *Thomas Rowland,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

John Burns, deceased, was one of the sureties on the guardian bond of George M. Hiss, and after his death, his personal estate having been exhausted, and also part of his real estate, in the payment of debts, a bill was filed for a sale of the residue of his real estate for the payment of a certain charge thereon, and for distribution of the proceeds of sale among those entitled.

The sale having been made, and the proceeds being in the hands of the trustee, subject to the Court's order, the wards of Hiss, namely, William H. H. Parks, James Parks and Josias S. Parks, the present appellees, filed their petition in the equity proceedings thus taken, praying to be paid, out of such proceeds of sale, the several amounts due them from Hiss, their guardian, as ascertained by accounts stated and passed in the Orphans' Court for Baltimore County, on the 16th of September, 1863.

In their petition they allege that Hiss is wholly without means, and owns no property from which they could make the amount due them; and that Cross, the other surety in the bond, is dead, and that his estate has been administered, and is insolvent, and that, consequently, there are no assets out of which their claims could be paid.

In resisting these applications, the parties interested in the distribution of the proceeds of the sale insist:

1. That it is not clear that the remedy at law is ineffectual, inasmuch as the insolvency of Hiss is not sufficiently shewn, and that, therefore, the appellees have no right to relief in equity as against the real assets of the deceased surety.

2. That, conceding the liability of the estate of the surety, the proceeding of the appellees should have been by original bill, and not by mere petition, in another proceeding.

3. That the surety was discharged from all liability on the bond, in respect of the money now in controversy, by reason of an order of the Orphans' Court, passed on the 21st of July, 1863, directing the guardian to place the money in bank, subject to the control of the Court.

These propositions will be disposed of in the order here stated:

1. As to the insolvency of Hiss, we can have no doubt of its existence, and, consequently, of the want of an effectual remedy at law as against him. There is no conflict of evidence upon the subject, but all the witnesses examined as to that fact concur in saying either that he was reputed to be

insolvent, or as being a party from whom money could not be collected.

But it is contended that it was not competent to prove the insolvency of Hiss by general reputation. This, however, is not an open question in the Courts of this State, as it has been expressly decided, in the case of *Crawford vs. Berry,* 6 *Gill & John.,* 63, that the admissibility of parol evidence of the notorious insolvency of a party could not be questioned. And, in the case of *Watkins vs. Worthington,* 2 *Bl.,* 540, it was said by the Chancellor that, in the great majority of cases, it would be impracticable, or exceedingly tedious and expensive, to procure any other proof of insolvency than that of general reputation in the community where the debtor resides and is known.

It is conceded that all the personal estate of Burns, the deceased surety, had been exhausted, and was insufficient to pay debts; and it is not denied that Cross, the other surety, was dead, and that his estate was insufficient to pay his debts. These facts established, in connection with the fact of the insolvency of Hiss, the principal in the bond, the right of the appellees is clear to proceed against the proceeds of sale of the real estate of Burns, to obtain payment in full of their respective claims. *Claggett vs. Worthington,* 3 *Gill,* 84. And it is not essential that either Hiss or the representatives of Cross should be parties to the proceeding, (*Young vs. Lyons,* 8 *Gill,* 168; *Story's Equity Pleading, sec.* 168,) although Hiss was, in fact, a party to the proceedings in which the appellees intervened.

2. As to the necessity of proceeding by original bill, instead of petition in a summary way, we think, by the well-established practice in this State, the mode of proceeding adopted in this case was fully authorized, and certainly commended for its convenience and economy to all parties concerned. The fund was in Court, subject to its order, and all the parties interested in resisting payment were before it. There is no dispute of the existence of the claims as against Hiss, and the

only question arising thereon for litigation in this cause is, whether they be enforcible as against the real estate of the deceased surety. This is dependent on a few facts, about the existence of which there is but little dispute. Why, then, should the parties have been required to institute an independent original proceeding, when there was one already pending in which the right in controversy could be investigated and declared with greater expedition, and less trouble and expense to all parties, than on original bill? In cases where a deceased debtor's real estate has been decreed to be sold for the payment of a mortgaged debt, or for partition among heirs, any creditor of the deceased, if his personal estate has been exhausted, will be allowed to come in by petition, and, upon proof under an order *nisi*, have his claim paid out of the whole or the surplus of the proceeds of the realty so far as they will go; the surplus, after the payment of the mortgage or other prior lien, being considered as a *residuum* of the real assets applicable to the payment of debts. This was the course of practice pursued by the late Chancellor Bland, as may be seen by reference to the case of *Fenwick vs. Laughlin*, 1 *Bl.*, 471, and which practice was approved and commended by the Court of Appeals, in the case of *Gaither & Warfield vs. Welch*, 3 *Gill & John.*, 259. And if such practice be allowed in the cases stated, we can perceive no reason why it should not prevail in cases like the present. For instances of the summary proceeding by petition here adopted, see the cases of *Baltzell vs. Foss*, 1 *Har. & Gill*, 504; *Hays vs. Miles*, 9 *Gill & John.*, 193; *Balch vs. Zentmyer*, 11 *Gill & John.*, 282.

3. Having thus disposed of the preliminary questions, we come now to consider the main and leading question in the case, and that is, as to the effect of the order of the Orphans' Court of the 21st of July, 1863, and the subsequent order of rescission of the 16th of September, 1863.

By the order of the 21st of July, 1863, Hiss, the guardian, on his own application, was authorized and directed to deposit the money in bank in the names of his wards, there to be held

subject to the control of the Court. And, by another clause in the order, the Register was directed to prepare the accounts of the guardian, and to allow him for the sums deposited in the names of the petitioners, upon his filing in Court the proper evidence of such deposit, and that thereupon he should be released from all further liability as guardian.

Whether the proper evidence of deposit was ever filed in Court is supposed by the appellees to be doubtful, but we think it fair to conclude, from all that is disclosed in the record, that such evidence was filed, and that the order in this respect was complied with.

At the time of this order and deposit, but one of the wards, William H. H. Parks, was of age to receipt to his guardian, the others being minors. And there had never been any accounts settled of the guardianship to any of the petitioners. The extent of the guardian's accountability therefore remained unascertained.

After making the deposit, instead of settling accounts in accordance with the order of the 21st of July, and taking credit for the amounts placed in bank, the guardian, on the 16th of September, 1863, on application, obtained an order allowing him, as guardian, to withdraw from bank the money deposited under the previous order, with directions that he should invest the same, in his own name as guardian, in the bonds or securities of the United States, or some other safe security, bearing six per cent. interest, and report such investment to the Court for its ratification, and that the order of the 21st of July, 1863, should be rescinded.

On the day of the passage of this last order, the guardian settled his first several accounts with the Orphans' Court; and in those accounts, instead of taking credit for the money deposited in bank, as authorized by the order of the 21st of July, he charged himself with it as still in his hands, thus showing clearly that the accounts were stated not in pursuance of the order of the 21st of July, but after and with reference to the order of the 16th of September, 1863.

Griffith and Wife *vs.* Parks, *et al.*

It is contended on the part of the appellants that, notwithstanding the order of the 16th of September, 1863, and the accounts stated and approved on that day, the sureties in the guardian's bond were released by the deposit of the money in bank, under the previous order of the 21st of July. And whether such be the effect of the order, and the deposit thereunder, depends upon the construction of sections 192 and 237, of Article 93, of the Code.

By the section last mentioned, the Orphans' Court is invested with discretionary power, either *ex officio*, or upon application, to order any guardian whom they may have appointed, or whose bond they may have approved, to bring into Court, or place in bank, or invest in bank or other incorporated stock, or any other good security, any money or funds received by such guardian, and the Court shall direct the manner and form in which such money or funds shall be placed in bank or invested; *and the same shall at all times be subject to the order and control of the Court.*

It was by virtue of this power that the order of the 21st of July was passed, but it will be observed that there is nothing in this provision of the law looking to the entire release of the guardian's bond. The power was given as an additional security of the fund, and for the greater protection of the ward. And while the guardian and his sureties may not be held responsible for money lost by the failure of a bank into which it has been deposited under an order of the Orphans' Court, it does not follow that all the responsibilities of the office of guardian cease, as to the particular fund, upon making the deposit, and that no subsequent control of or dealing with it will render the guardian accountable. On the contrary, the guardian still continues to be the officer of the Court, subject to all of its orders and directions with respect to the ward's estate within its control and jurisdiction, and its control of the fund in bank, though on deposit in the name of the ward, is most generally, if not necessarily, exercised by and through the agency of the guardian. If money be placed in bank by

the direction of the Court to await an opportunity for investment, who should the Court require, more properly than the guardian, to seek for and make the investment? And if the guardian be the proper party for such service to his ward, is it to be held that by placing the money in bank under the Court's order all responsibility of the bond, in regard to such money will at once cease, and that for the subsequent conduct of the guardian in making, or neglecting to make, the investment, the ward has no security at all? Such an idea could never be tolerated in any Court where law has the semblance of justice. In this case, by the order directing the deposit to be made, full control was retained by the Court over the fund. This was a power of which the Court could not have divested itself; for, as we have seen by the law, money so deposited shall at all times be subject to the order and control of the Court. Both the fund and the guardian, then, being subject to the Court's direction, why was it not competent to it to order and direct the guardian to invest the money in some safe stock, such as was specified in the order of the 16th of September, 1863? The law certainly never designed that the ward's funds should remain on deposit in bank unproductive, when they could be safely invested to yield an interest. The Court, therefore, in directing the investment to be made, acted within the scope of their power and jurisdiction; but whether discreetly or not is immaterial to the present inquiry, and Hiss, as their officer, was bound to observe and execute their order, and we think it clear, that for any default in this respect his bond would be bound.

But it is contended, that as one of the wards was, at the time of the passage of these orders, of full age, and competent to receipt for his estate, so far at least as he is concerned, the order of the 16th of September, 1863, was void and without effect to charge the bond.

To this proposition we cannot assent. There had been no account settled with the Court, and the fund had never been ordered to be paid over to the ward. By sec. 192, of Article

93, of the Code, already referred to, it is provided that on a ward's arrival at age, the guardian shall exhibit *a final* account to the Orphans' Court, and shall deliver up, agreeably to the Courts' order, to the ward, all the property of such ward in his hands, including bonds and other securities, and on failure his bond may be put in suit. As the account is to be rendered to the Court, after the ward becomes of age, its jurisdiction and control of both fund and guardian must, of necessity, remain until such final accounting. Until final account and surrender of the property to the ward, the guardian remains responsible for the estate committed to his charge; and the obligation of the bond must be taken as co-extensive with the duty and accountability of the guardian. Upon no other construction would the bond afford the security intended by the law.

Discovering nothing in the orders appealed from of which we disapprove, they will be affirmed, with costs to the appellees.

*Orders affirmed with costs.*

(Decided 7th January, 1870.)