RICHARD BERNARD, Guardian of Florence Ruth *vs.* EQUITABLE GUARANTEE AND TRUST COMPANY OF WILMINGTON, DELAWARE.

*Guardian and Ward—Right of Foreign Guardian.*

An Orphans' Court of this State which has appointed a guardian of an infant then residing here is authorized to require him to transfer the property of the ward to a guardian subsequently appointed in another State, where the infant now resides.

Appeal from the Orphans' Court of Baltimore City. The case is stated in the opinion of the Court.

The cause was argued before Robinson, C. J., Bryan, McSherry, Fowler, Page, Roberts and Boyd, JJ.

*Richard Bernard & Son,* for the appellant, cited: *Peters* v. *Peters,* 20 Md. 178 ; *Cannon* v. *Cooke,* 32 Md. 484 ; *Slattery* v. *Smiley,* 25 Md. 389 ; *Kraft* v. *Wickey,* 4 G. & J. 332 ; *Clay* v. *Brittingham,* 34 Md. 676.

*Richard S. Culbreth,* for the appellee, cited: *Corrie's case,* 2 Bland, 504; *Griffith* v. *Parks,* 32 Md. 8; *Keller* v. *Harper,* 64 Md. 82; *Forney* v. *Shriner,* 60 Md. 422; *Budd* v. *Garrison,* 45 Md. 418; *Gunther* v. *State,* 31 Md. 32.

BOYD, J., delivered the opinion of the Court.

This is an appeal taken from an order of the Orphans' Court of Baltimore City, directing Richard Bernard, guardian of Florence Ruth under appointment of said Court, to turn over the funds, &c., in his hands, as such guardian, to the appellee, which was appointed her guardian by the Orphans' Court of the State of Delaware, in and for New Castle County.

The appellee filed a petition in the Court below, in which he alleges, among other things :

That Samuel Benjamin, late of Baltimore City, died in 1890, leaving a last will and testament, which was duly probated in Baltimore ; that item "4" of said will empowered his executor to convert his real and leasehold estate into money, the proceeds of which, together with other money coming into his hands as executor, the testator gave to his two children and six grandchildren, and directed that the shares of his minor grandchildren be paid to them as they respectively reach the age of twenty-one years; that the executor qualified and converted the estate into cash, and there was distributed in the administration account to Florence Ruth $7,466.52; that at the time of the filing of the administration account she was at school temporarily in the State of Maryland, and appellant was appointed her guardian in Maryland; that Florence Ruth is now a resident of Delaware and non-resident of the State of Maryland; that on November 29, 1893, petitioner was appointed her guardian by the Orphans' Court in and for New Castle County, in the State of Delaware, where she then resided, which Court had authority under section 7, Chapter 96, of the Revised Code of said State, to appoint guardians, such guardianship of

females to continue until they are twenty-one years of age or marry; that it has given bond and sufficient security for the faithful performance of its trust, and as such guardian has control of the person of said infant; that the entire amount of personal property belonging to the said infant is the $7,466.52 which is in the hands of Richard Bernard, in this State, and that she has no real estate from which any income hath or is likely to come into the hands of the petitioner; that petitioner is a body corporate, with power under the laws of Delaware to serve in the capacity of guardian under the circumstances set out in the petition.

A duly authenticated copy of the record of its appointment and qualification of the bond so given by it and the affidavit of the chief clerk of the said Orphans' Court of its sufficiency were filed with the petition.

It then prays that Richard Bernard, guardian of Florence Ruth, be required to render to the Court an account of all the property in his hands belonging to her, and that an order may be passed for the payment, transfer or delivery of such property by the said Richard Bernard, guardian, to the petitioner.

The appellant filed an answer admitting that Florence Ruth was then residing in Newark, Delaware, where she went in June, 1893, but alleging that she had resided in Baltimore, except for some short intervals, since her birth. He admits that the share of Florence Ruth in the estate of Samuel Benjamin was $7,466.52, and alleges that he had invested the same in ground rents, etc., under the order of the Orphans' Court of Baltimore City, but denies the right of the appellee to interfere with him. The answer sets out at some length the circumstances under which the appellant was appointed; and the real question presented is whether a foreign guardian has the right to obtain an order from an Orphans' Court of this State which had appointed a guardian to require the latter turn over the estate to the guardian appointed in the State where the infant resides.

It is admitted by an agreement of counsel that the ap-

pellee was duly incorporated under the laws of Delaware with power to serve as guardian ; that it was appointed guardian of Florence Ruth on November 19th, 1893, by the Court authorized by said State to appoint guardians (the Orphans' Court in and for New Castle County, State of Delaware), such guardianship to continue until the age of 21 years or marriage, and that it has given good and sufficient security for the faithful performance of its trust as such guardian.     The petition follows very closely the language of the section of Art. 93 of the Code relative to foreign guardians.     The evidence shows that Florence Ruth was at the time the appellee was appointed, a resident of Delaware—whatever may be the facts as to her former residence.     But the appellant claims that inasmuch as he was regularly appointed in this State, the Orphans' Court which appointed him has no authority to require him to turn over the property of his ward in his hands, and intimates that it is simply an effort of the father of the infant to take his daughter's property from the control of the resident guardian for his own advantage.

The only witness examined in the proceedings before the Orphans' Court was Levi Ruth.     The appellant claims that he offered no testimony, beyond such admissions as are in the record, because the Court decided that no further evidence would be admitted.

If he desired to have this Court pass on the action of the Orphans' Court in that respect, of course it should have been brought here in the regular way.

The appeal was taken from the judgment and order of the Court directing the delivery of the estate of Florence Ruth to the appellee, and we are confined to what is presented by the record.     The testimony of Levi Ruth is, that his daughter resided in Delaware, which is uncontradicted ; in fact, the answer admits that "it is true, as alleged in sixth paragraph of said petition, that said Florence Ruth is at present residing in Newark, Delaware, where she went in June last."     It is, therefore, proven that she is a non-resi-

dent of Maryland, and resides in Delaware.    The petition complies with all the requirements of sections 197 and 198 of Art. 93, of the Code, and the proof in the case sustains all the essential allegations made in it.

It is contended by the appellant that the Orphans' Court had no power to direct a guardian appointed by the proper authority in this State to turn over the property in his hands to a guardian appointed in another State, although the ward may reside there.    He contends that sections 195 to 203 of Art. 93, which are under the subdivision of " Guardians and infants not residing in this State," must be construed together, and the expression used in section 195, "having no guardian appointed in this State," must be read into the other sections, and hence  section 196 must be construed to apply only to a case where there is no guardian in this State. We do not agree with him in that construction.    Those sections, as codified in the Code of 1888, are the same as those in the Code of 1860.

Section 195 authorizes the Orphans' Court of the county or city in this State in which there is property, or debts, or choses in action due or recoverable, of non-resident infants having no guardian appointed in this State to empower a foreign guardian to take possession of such property and to sue for and recover such debts  or choses in action, and to act in all respects as if such guardian had been appointed by some one of the Orphans' Courts in this State, upon his complying with certain requirements prescribed in that section.    Without such statute a foreign guardian could not proceed in this State, as was decided as early as *Kraft* v. *Wickey*, 4 G. & J. 332.

Section 196, as amended by the Act of 1890, chapter 253, provides "that if any non-resident infant shall be entitled to    *    *    *    * any legacy, bequest or distributive share in any personal property in the hands of any administrator or *guardian in this State*, and such infant has a guardian regularly appointed in the State  *   *   *   *   in which such infant resides, such foreign guardian may obtain

an ·order from the proper Court for the payment, transfer or delivery of such proceeds, legacy, bequest or distributive share upon the terms prescribed in the succeeding section."

That section not only does not exempt those cases where there are guardians in this State, but it in terms provides for the transfer of property in the hands of a "*guardian* in this State."

Section 197 prescribes with great minuteness what shall be stated in the petition of the foreign guardian, but neither in terms nor by implication requires the statement to be made that the infant had no guardian in this State. If section 196 was only intended to apply to such cases it is fair to assume that the legislature would have required the foreign guardian to state in the petition the fact that there was no guardian in this State.

But section 199, which determines where the petitions covering the several cases shall be filed, provides that, "if the money or property claimed is in the hands of an executor, administrator or *guardian*, the petition shall be presented to the Orphans' Court of the county in which the administration is granted or *in which the guardian gave bond.*"

It is contended by the appellant that the use of the word guardian may refer to the guardian of some other than the non-resident infant. It is difficult to imagine a case in which the guardian of a non-resident infant could demand of a resident guardian of *another infant* money or property in the latter's hands. If the resident infant died and the non-resident was next of kin, the latter would take through an administration of the estate, not immediately from the guardian of the deceased infant. But assuming that such a case might occur, the statute does not confine the right of the foreign guardian to obtaining property from a guardian of some infant other than the non-resident, and we do not think a reasonable interpretation of these provisions of the Code justifies such a construction.

We have nothing to do with the wisdom of such legislation, but must construe it as we find it. We do not fear,

however, such serious results from this construction of the law as the learned counsel for the appellants suggest. ·

It is not to be assumed that a parent, or any one having control over the infant, will subject the estate of the latter to costs and other loss by removing him from State to State to annoy the guardians or accomplish some purpose of his own.

The order of the Court below is in no respect in conflict with the case of *Clay* v. *Brittingham*, 34 Md., 675. The application of a foreign guardian to have the securities, etc., in controversy in that case transferred to him was refused because they were held by a trustee appointed under what are now sections 57, etc., of Art. 16 of the Code, to sell the real estate of an infant at the instance of his guardian.   Such trustee and the funds held by him were peculiarly under the control of the Court of Equity, under those provisions of the Code, and· could not under the law as it then stood, even pass into the hands of a resident guardian. The statute provided that upon the death of such infant under age, intestate and without issue, the proceeds of such sale should descend or be distributed as the property or estate would if it had not been sold.   This Court, in adopting the opinion of the lower Court, held that the sections of Art. 16 must be construed in connection with secs. 196, &c., of Art. 93, and that the latter did not apply to the proceeds of real estate sold under the provisions of Art. 16.   Two of the five judges who sat in that case dissented, even under those circumstances.   It was not intimated either in the opinion adopted by the majority or in the dissenting opinion that the fact that there was a guardian of that infant in this State (as the record shows) would in any way interfere with the right of the foreign guardian to have the securities, etc., if the provisions of Art. 16 had not stood in the way.

We do not deem it necessary to discuss the question whether the executor of Samuel Benjamin rightly turned over the distributive share of Florence Ruth to the appellant.   He is not in a position to deny that.   When the

petition was filed and the final order of the Orphans' Court was passed, the ward was under eighteen years of age. Since then she has reached that age, and the appellant's control over her has ceased, and he would have been required to settle a final account. He is not therefore injured by the act of the Orphans' Court. It is only necessary for him to know that he is authorized to turn the property over under a valid order, which we determine this to .be.

When the Orphans' Court is satisfied of the proofs of the facts set forth in the petition and of the sufficiency of the security, it is authorized by section 198 to pass an order for the purposes mentioned in the three preceding sections.

This having been done in this case without committing any error that has been brought to our attention, we must affirm the order.

—*Order affirmed with costs to the appellee, and cause remanded.*

(Decided November 23rd, 1894.)