# WILLIAM HENRY BALDWIN, JR., AND SUMMER-FIELD BALDWIN *vs.* STATE OF MARYLAND, USE OF D. FRANK HULL, COLLECTOR, &c.

*Taxation of Property of a Ward—Liabilities of Sureties on Guardian's Bond for Taxes—Action in Name of the State for Use of Collector—Non-Residence of Ward.*

The sureties on a bond of a guardian, conditioned for the performance of his duties as guardian according to law, are liable for the taxes assessed against the property of the ward; *Code,* Art 81, secs. 9 and 65, expressly directing the payment of such taxes by the guardian.

Such sureties are also liable for taxes on the ward's property levied after he came of age, but while the guardian still held the property and before he passed a final account.

The fact that the guardian settled his final account with the ward and delivered the property to him after the taxes were levied, and before the institution of the suit to recover the same, does not relieve the sureties from liability therefor.

An action to recover such taxes is properly brought in the name of the State, to the use of the Collector of Taxes for the County where the guardian was appointed. The objection that the term of office of the collector, named in the declaration, has expired, is no defence, since the judgment is entered in the name of the State for whoever is entitled to the beneficial interest.

When a statute authorizes a suit to be brought on a bond in the name of the State, the Court will, on motion, direct the proper use to be entered. A change in the name of the person beneficially entitled does not affect the defence.

*Code,* Art. 81, sec. 83, provides that taxes shall be collected by the Collectors of the counties within four years after the same shall have been levied, and if the same shall not be collected within four years, the parties from whom such taxes may be demanded may plead this section in bar of any recovery of the same. *Held,* that this provision is not a bar to a suit against the sureties, on a guardian's bond, brought to recover taxes assessed on the property of the ward, when such property was not within the State, and could not have been seized and sold for taxes by the Collector.

Under *Code,* Art. 81, sec. 145, ample provision is made for giving notice of the assessment for taxation of property held by a guardian.

When a ward owns real estate in a county other than that in which

the guardian is appointed, such real estate is taxable only in the county where it is situated.

When a guardian has been appointed in this State, the property in his hands, as such, continues to be liable to taxation here, although both ward and guardian subsequently remove to another State, if the property is not transferred to a guardian appointed in that State under *Code*, Art, 93, sec. 196.

Appeal from the Superior Court of Baltimore City, (DENNIS, J.), where the case was tried without a jury, and a judgment rendered for plaintiff for $1,446.12.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD and PEARCE, JJ.

*Charles A. Boston* and *Charles G. Baldwin*, for the appellants.

*J. Markham Marshall* (with whom was *Henry Kyd Douglas* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City, on a verdict rendered by the Court, sitting as a jury, in an action on the bond of William Woodward Baldwin, guardian of Columbus C. Baldwin, brought in the name of the State of Maryland for the use of D. Frank Hull, Collector of State and County Taxes for Washington County. In the case of *Baldwin* v. *Washington County*, 85 Md. 145, we affirmed a decree of the Circuit Court for that county, refusing to grant an injunction to restrain the collection of a part of the taxes involved in this suit (that case including those for the years 1893 and 1894, while this also embraces those for the year 1895), on the ground that under a proper interpretation of our statutes the *situs* of personal property in the hands of a guardian is, for the purposes of taxation, in the county where he was appointed, and the fact that both guardian and ward were non-residents of this State did not relieve the guardian from the payment of the taxes. It was also de-

# BALDWIN vs. STATE, Use HULL.

termined that, although the taxes were levied after the ward had become of age, inasmuch as the guardian had not settled his final account in the Orphans' Court, it was the duty of the Register of Wills to report the property liable to taxation; of the County Commissioners to assess it, and of the guardian to pay the taxes thereon, notwithstanding the fact that the ward was of age. In this case, as in that, there was an agreed statement of facts, and it is now agreed that on the 26th day of May, 1896, the guardian stated a final account in the Orphans' Court, and delivered all the property to the ward, who subsequently executed a release and discharge to the defendants, both being done prior to the institution of this suit. The defendants having interposed numerous defences, they having filed originally twenty-six pleas, and afterwards twenty-four additional ones. They also offered fifteen prayers, made a motion in arrest of judgment and excepted to the rulings of the Court on various offers of evidence, but we will not attempt to discuss each plea and prayer separately, and will only refer to the principal points presented.

1. The first question to be considered is, whether the defendants, who are sureties on the bond, are responsible, even conceding their principal to be so. It will be admitted at the beginning of the discussion that it does not necessarily follow that sureties on a guardian's bond are liable because the guardian is. Their responsibility must depend upon the extent of the obligation created by the terms of the bond and the statutes which can be read into it. This bond is in the exact language of that prescribed by the statute, and therefore is unlike the one in *State* v. *Hill et al.*, 88 Md. 111, where the parties had deliberately excluded a term or condition of the statute which the plaintiffs sought to import into the contract. The condition is that the guardian "shall faithfully account with the Orphans' Court of Washington County, as directed by law, for the management of the property and estate of the orphan under his care, and shall also deliver up the said property agreeably

to the order of said Court, or the directions of law, and shall in all respects perform the duty of guardian to the said Columbus C. Baldwin, according to law." It having been so recently decided by us that the guardian is responsible for the taxes levied for the years 1893 and 1894, and those for 1895 having been levied under the same conditions, it is useless for us to discuss that further. The question now to be determined is, laying aside for the present the other defences urged, are the sureties on his bond liable? Section 65 of Art. 81 of the Code, provides, that "administrators shall pay all taxes due from the decedents, and on failure, their bonds shall be put in suit for the use of the State and recovery had for the whole amount of taxes due, and interest from the time they were payable; this section shall also apply to guardians, for taxes upon property in their hands as such." And section 9 of that Article, which requires the Registers of Wills to return to the County Commissioners a summary account of all property that shall appear by the records of the several Orphans' Courts to be in the hands of each executor, administrator or guardian, provides that every "executor, administrator or guardian shall be liable to pay the taxes levied thereon and shall be allowed therefor by the Orphans' Court in his accounts." There would seem to be no room for doubt that the bond of a guardian is liable for taxes levied on property in his hands, while he continues to be such guardian, but does the fact that his ward was of age when the taxes were levied, relieve his sureties, notwithstanding he still held the property and had not filed his final account?

Their liability for the property certainly did not cease when the ward became of age, but they could be sued at any time within twelve years from that date, at least for the benefit of the ward, if the guardian did not account with him during that time. *State, use Henderson* v. *Henderson*, 54 Md. 333. They were not only liable for the property he had when his ward became of age, but on the income from it until he accounted with him, unless, of course, he

in some way discharged them.    In *Griffith* v. *Parks*, 32 Md.
1, the Court held, that the sureties were liable although
after one of the wards had become of age the Orphans'
Court had passed an order authorizing and directing the
guardian to deposit money in bank in the names of his
wards, there to be held subject to the control of the Court,
which was done, and the Court then passed another order
authorizing him to withdraw the money, so deposited, for
the purposes of investment, and it was placed on the ground
that " there had been no account settled with the Court
and the fund had never been ordered to be paid over to the
ward. "    It was also said, in that case, " as the account is
to be rendered to the Court after the ward becomes of age,
its jurisdiction and control of both fund and guardian must
of necessity remain until such final accounting."    If, then,
the property so held by the guardian after the ward becomes
of age and before he accounts to the Court is of the charac-
ter liable to taxation, why are not both the guardian and
his sureties liable for the taxes?    We have already deter-
mined in the other case that the guardian is, and as he
still holds the property as guardian, as decided in *Griffith* v.
*Parks*, by the very terms of the statute the bond is liable
to be put in suit "for taxes upon property in his hands as
such."    If it were not so, any guardian, resident or non-
resident, who is not financially responsible, who held prop-
erty that could not be reached by a tax collector, could
collude with his ward and thus let the property escape
taxation indefinitely.

The requirement to pay taxes on the property cannot
properly be said to impose new duties on the guardian or to
add new responsibilities to the sureties, such as were not
contemplated by the contract when they went on the bond,
for he was required to pay taxes, as one of the duties im-
posed upon him by law, and indeed as a consequence of
his having taxable property ; and, notwithstanding the ward
is of age, the sureties were responsible for the proper
payment of the money or delivery of the property in the

guardian's hands.   It is not contended that they are liable
for any additional amount not in the guardian's hands when
the ward became of age, except, of course, the income or
interest, and they were already responsible for the property
and its income until the guardian settled his account.   The
guardian is entitled to be credited with all sums he
properly pays out of his income, or even out of the princi-
pal, when duly allowed by the Court, and by section 9 of
Article 81, *supra*, he is expressly allowed credit for taxes
paid.   The only possible difference is that instead of being
responsible to one person (the ward), they are responsible
for the proper payment to those entitled to be paid, but
that responsibility they assumed when they went on the
bond.   The law, then, required their principal to pay the taxes
on taxable property in his possession, and it being one of
the duties required of him, they undertook the proper per-
formance of it by him, just as they did his other duties.
It is, therefore, in no sense imposing any new obligations
on them or adding to the risks they assumed when they
became sureties.

Nor can the fact that after the taxes were levied, but
before this suit was brought, the guardian settled his final
account, and the ward executed a release of the defendants,
affect the question.   The settlement of the accounts between
them cannot bind others who are not parties to it.   If, as
we have determined, the guardian and the appellants as
sureties on his bond, were responsible for the taxes, neither
of them could be relieved of the liability by such settle-
ment.   In an action on a guardian's bond it was held in
*Spedden* v. *State*, 3 H. & J. 251, that accounts passed in
the Orphans' Court were not final and conclusive on either
the guardian or the ward, but were only *prima facie* evi-
dence of the amounts due, etc.   See also *State* v. *Baker*,
8 Md. 44.   Manifestly the release by the ward cannot dis-
charge any obligations to third parties.

It is said that if the plaintiff's theory is correct, there
would be no end to the liability of the sureties, but we do

not see how such results can follow. In the first place, the right of action on the bond would be barred at the end of twelve years from the time the ward became of age. In *Henderson's case, supra,* the majority of this Court held distinctly that the limitation ran from the time the ward became of age and not, as was urged in the dissenting opinion, from the time of the new breach. As, after the expiration of the time fixed by the statute, there could be no recovery by the ward against the guardian and his sureties for the property or its value, manifestly when that right of recovery ceased, a tax could not be imposed on the property so as to bind the sureties. But there would be no necessity for the sureties incurring liability for that time. It is true that section 255 of Art. 93 of the Code, cited by the appellants, which provides for the Orphans' Court, *ex-officio*, requiring executors, administrators and guardians to make reports, etc., when in default, concludes by saying that " no guardian shall be thus summoned, *ex-officio*, to appear before the Court after his ward has arrived at legal age," etc., but that does not preclude a proceeding at the instance of an interested party, such as a surety or a ward, to require the guardian to settle an account.

We do not understand why no one but the ward can sue a guardian's bond. The fact that no case has been found where it has been done, does not of itself settle the question. Fortunately it does not often occur (and we know of no such case in this State, at least), that a guardian, after going into Court for the purpose of testing the validity of a tax imposed upon property in his hands and after the question is settled against his contention by the appellate Court of the State, will still undertake to avoid the payment of them. No better illustration of the importance of permitting some one other than the ward to sue, could be furnished than this case. But section 65 of Art. 81, which expressly gives the right of action on the bond, for the use of the State, to recover the taxes, is of itself an answer to the statement that no one but the ward can sue, and section

nine requires him to pay the taxes and allows him credit for them. Of course the bond is required mainly for the protection of the ward, at least he is the one most likely to be affected by the default of the guardian, but the condition of it is in terms broad enough to cover the rights of others interested in the estate, if there be any, as well as the ward. The guardian must deliver up the property agreeably to the order of the Court, or the directions of law, " and shall in all respects perform the duties of guardian." When it is once established that his duty is to pay the taxes, does it not come within the very letter of the undertaking of the sureties? And, if that be so, can it be possible that no one but the ward (who is more interested from a financial standpoint in not paying the taxes than the guardian is) can sue, and that if he will not, and the guardian and the property are beyond the reach of the tax authorities, that the taxes cannot be collected? Neither reason nor authority sustains such contention. The cases of *State, use Murray* v. *Murray*, 24 Md. 310, and *Fridge* v. *State*, 3 G. & J. 103, cited by the appellants, certainly do not. In the former case the Court said that the companies which sought to get the benefit of the suit against the bond were tort-feasors equally with the guardian, and, of course, they could not sue the bond for that act, if they could for any other, and in the latter case, which was a suit for the use of the ward, it was said that if the ward had given a good release it would have discharged the guardian and his sureties from all responsibility on the guardian's bond, but that, of course, only referred to a suit between her and the bondsmen.

2. It is next contended that the plantiff (meaning Hull) has no right to sue, and several reasons were assigned. In the first place, it is said that section 65 of Art. 81 provides that on failure to pay the taxes the bond shall be put in suit " for the use of the State." The suit must be in the name of the State, and it certainly does not mean that it must be brought by the " State of Maryland for the use of

the State of Maryland." The State must act through some officer or agent, and as D. Frank Hull was the Collector of State Taxes for Washington County, a suit brought as this was, so far as the State taxes are concerned, would be for the use of the State. The State is and must be the legal plaintiff, as the bond is given to it, and there is no provision in the statute for the suit to be brought in any other way. In *Fridge* v. *State, supra*, it was determined that in a suit on a guardian's bond, in which an infant was the equitable plaintiff, " it was not necessary for the purposes of the suit to enter the use at all, although it is usually done in such cases, it might have been carried on as well without it, as with it. And being done, her nonage could not form the fit subject of a plea, the action not being brought in her name." The Court referred to *State* v. *Dorsey*, 3 G. & J. 75. There the suit was on a tax collector's bond, and was brought for the use of the Levy Court of Baltimore County, which became extinct after the suit was brought. The Court said " the judgment is entered in the name of the nominal, the legal plaintiff, and it is nothing to the defendant who may be entitled to the equitable interest ;" and again, " there is no necessity for the purposes of the suit, to enter the use, whether it is brought for the benefit of an individual or a corporation ; nor if entered, does it make any difference to the defendant how it may vary or change as to the person asserting the same right. It does not affect his defence, nor can any change of the use become a fit subject of plea. The judgment is in the name of the State, and will be for the use of whoever is entitled to the beneficial interest." In *Wallis* v. *Dilley*, 7 Md. 250, *Dorsey's case* was cited to sustain a suit on an injunction bond by the obligees, one of whom had taken the benefit of the insolvent laws, and a permanent trustee had been appointed, and it was said, " in the exercise of a *quasi* equitable jurisdiction, Courts of Common Law, on motion of a *cestui que trust, or of a defendant*, will order the proper use to be entered in the action."

*Dorsey's case* has frequently been approved by this Court. *Logan et al.* v. *State,* 39 Md. 188; *Dashiell* v. *Mayor, etc., of Baltimore,* 45 Md. 620; *Le Strange* v. *State,* 58 Md. 46. If there was any possible danger of the defendants being required to pay the wrong party, they could have made a motion to have the case entered to the use of the right party.    But the State could clearly permit one who was its tax collector for these taxes to sue, and the statute did not mean to exclude the County Commissioners or its collector, for it required the guardian to pay all taxes—not simply the State taxes.    But independent of that, section 9 makes it the duty of the guardian to pay the taxes which the County Commissioners levy—which under our law are the State and county taxes, and not simply the State taxes, and as the guardian is required to pay them, and is authorized to be allowed for them in his accounts, his bond is liable if he fails to perform that duty.    The tax collector is required to account for the taxes and to pay them, unless excused by the proper authorities.    It is therefore his duty to collect them, if that can be done, and with such burden on him there can be no reason why he should not be permitted to sue the bond, if the guardian does not pay them, as he is the person to whom the guardian is required to pay them.

But it is contended that section 82 of Article 81 limits the right of the tax collector to proceed, to one year, after the expiration of the term for which he was appointed, unless his time be extended by the Court under section 38, of Article 26, of the Code.    Section 82 was not intended as a limitation on the collector as to time within which he can receive taxes placed in his hands for collection, but as an extension of the time within which he could resort to all remedies the law furnished him during his term.    It provides that " he shall be allowed the term of one year after the expiration of the time for which he was appointed, to collect all balances due him in the same manner as he could collect the same before the expiration of his term of office."

And section 38 of Art. 26 authorizes the Court to extend
the time of a collector who has failed or neglected to col-
lect taxes within the time prescribed by law, which exten-
sion may be limited in the discretion of the Court, and may be
renewed as may be deemed reasonable.    When that is done
he can proceed by distress or any way authorized during his
term, but even if Hull was not authorized to collect the taxes
in the ordinary way after the year, and they were still due to
the State and county, the plea " that the alleged cause of
action did not accrue within one year before this suit " was
manifestly bad, as there was no such limitation fixed by
law.    If, in point of fact, no order was passed extending
his time, which, by the statute, is made a matter of record,
and therefore easily ascertained, the defendants could, under
the case of *Wallis* v. *Dilley, supra*, have had the proper use
entered, if they deemed that necessary for their protection.
Inasmuch, then, as the State was the legal plaintiff, and it
is admitted that the taxes had not been paid, "the judgment
is entered in the name of the State for whoever is entitled
to the beneficial interest," and a plea that Hull was not en-
titled to receive the taxes was no answer to the suit, even
if it be admitted that in a suit in his own name he would
have been compelled to allege and prove that his time had
been extended.

3. The fifth plea alleges that the taxes for 1893 were not
levied within four years before this suit, and the defendants
plead section 83 of Art. 81 of the Code "in bar of any
recovery of such taxes as are legally barred by said stat-
ute."    That section is as follows :  " All taxes levied for
county or city purposes shall be collected by the collectors
of the counties or cities, respectively, within four years after
the same shall have been levied ; and if the same shall not
be collected within four years, the parties from whom such
taxes may be demanded may plead this section in bar of
any recovery of the same."    In *Hebb* v. *Moore*, 66 Md.
167, in speaking of that provision this Court said, "this
section of the Code manifestly was intended to apply only

to such cases and such persons when the collector could on notice proceed summarily to sell the debtor's property for the taxes; and whenever he could do so, and did not resort to his distress and sale, the statute was permitted to be pleaded as a bar, after the expiration of four years from the levy of such taxes. It was not intended and could not have been intended to be a bar, where the law would not allow the collector to resort to his legal remedies for summary enforcement of payment." There the property was under the control of a trustee under the jurisdiction of the Court, and hence the collector could not have proceeded against it, and, as in this case, the collector could not seize any property, as it was out of the State, even if it was of the character that could be seized and sold, if within his jurisdiction, it might with force be said that under the above decision this particular provision of law is not applicable to this case. But, independent of that, the law authorizes " the parties from whom such taxes may be demanded," to plead the section in bar of recovery. The sureties are not the parties from whom these taxes were to be demanded, within the meaning of that statute, and this suit is really to recover damages sustained by reason of the guardian's failure to perform his duty in not paying the taxes, which are the measure of the damages recoverable on the bond, which bond is not barred under the statute applicable to it. The limitations prescribed by this section, therefore, cannot be applied to this suit.

4. The only other question that we need refer to is the constitutionality of the tax thus levied on the property. Having determined in the case of *Baldwin* v. *Washington County*, that the *situs* of the property was in that county, we do not propose to enter into an extended discussion of the constitutional questions attempted to be raised. We will, however, correct some erroneous conclusions that the counsel for the appellants seem to have reached in reference to our statutes. In the first place, there is no provision in them requiring the guardian of a ward who owns real

estate out of the county where the guardian was appointed, to pay the taxes levied thereon in the latter county, and such is neither the law nor the practice in this State. The guardian of a ward who owns real estate in this State has it " under his care," but it is not property " in the hands of " such guardian which is intended to be assessed as provided for in section 9 of Art 81. of the Code. Real estate is assessed by the assessors, duly appointed under the statute in the county where it lies, and taxes are levied thereon by the County Commissioners and paid there. That is done whether owned by adults, infants or even corporations— the latter being done so as to give the benefit of taxation on property of that character to the county where it is situated, which for many years has been the policy of the laws of this State. The property reported to the County Commissioners by the Register of Wills is only assessed " if not before assessed," and as we intimated in *Baldwin* v. *Washington County*, the provision only applies to property that is liable to taxation under the laws of the State. There is no discrimination whatever against infants or their guardians, but they are only bound to pay taxes as others do— no more, and, so far as the law can prevent it, no less. The guardian has every opportunity to be heard before any new assessment is made, and to have any report of the Register of Wills corrected, if erroneous. The reports are required to be made on or before the first day of March, and the levies, in most cases, as in the case now under consideration, are not made until June. So if the guardian attends to his duties there is no possible danger of any unjust assessment against his ward. The agreed statement of facts in the former record, made a part of this, shows that the property assessed consists of stocks and bonds of corporations organized and located outside of the State, which, under our laws, are assessable. There is no justification for the claim made in the appellant's brief that all the property of an infant is taxable in the county of the guardian's appointment or that the Legislature has devised a plan

for taxing the property of a non-resident ward regardless of its location.

Nor is there any valid reason to contend that there is no provision in the law for notice.   In addition to what we have said above, we refer to section 145 of the same Article of the Code, which expressly prohibits the County Commissioners from increasing the assessment of the property previously assessed, or adding any new property not valued and returned to them by the proper assessors or collectors, without notice as therein required.

It is also claimed that the law provides a different scheme of taxation for infants under guardianship from that of adults, but we fail to see any foundation for that.   It is true the Register is required to make the return of the property in the hands of the guardian, but that is simply because the Orphans' Court has supervision over the ward's property, and is supposed to have an accurate account of that actually held by the guardian.   The same thing is required of the Registers as to executors and administrators, and officers of corporations are required to give statements in much more detail of the property under their control.

We of course do not question the decisions of the Supreme Court of the United States, cited by the appellant, as to the right of a State to tax property outside of it limits when the owner is beyond its jurisdiction, but we do not deem them applicable to this case.   In *Baldwin* v. *Washington County*, we held that the *situs* of this property was in that county, and we have no reason to change the views therein expressed.   Under our statutes property of wards in the hands of guardians, appointed in this State, is under the direct control of the Courts appointing them.   This is necessary for the protection of the wards, and our Orphans' Courts make no distinction between resident and non-resident infants, if the latter come under their care.   If the infant be a non-resident, a guardian can only be appointed if he has property in this State.   Sec. 203, Art. 93.   If he be a resident when the guardian is appointed and afterwards remove from the State, a guardian appointed at the place of

his new residence has ample power to have the property transferred to him under section 196 of that Article as construed by us in *Bernard* v. *Trust Company*, 80 Md. 118, but as long as that is not done the control and jurisdiction of the Court here over his property does and ought to continue. In contemplation of law the personal property remains in the county where the guardian was appointed, and is to be accounted for there and at no other place. No guardian can sell any property of his ward without an order of the Orphans' Court, and any sale or removal without such order is void and no title can pass to the purchaser. Sec. 173 of Art. 93. Under section 237 the Court can either *ex-officio,* or upon application require the guardian, at any time, to bring into Court any money or funds received by him, can direct how they shall be invested " and the same shall at all times be subject to the order and control of the Court." It was never supposed that the fact that the guardian was a non-resident could for any purpose be the means of fixing the *situs* of the personal property at his place of residence. But we will not further discuss this question, as, in the case of *Baldwin* v. *Washington County*, we did so at some length. No injustice can be done either the ward or guardian by the construction we have placed on the statutes in the other case, but we only require what any one having the protection and occupying the time of our Orphans' Courts should readily assent to. In neither of the cases has there been any suggestion that this guardian or his ward has paid taxes on any of this property elsewhere, and therefore it is not necessary to determine whether, under those circumstances, the County Commissioners could relieve such property from assessment.

Although we have not attempted to discuss each plea, prayer and exception separately, we have referred to such points as were urged at the argument and we will affirm the judgment.

> *Judgment affirmed, costs to be paid*
> *by the appellants.*

(Decided June 22nd, 1899).