## Webber et al. v. Commonwealth.
(Decided Oct. 2, 1936.)

ROGERS & ROGERS for appellants.

H. D. KREMER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and dismissing in part.

The background facts furnishing the foundation of this litigation rival those that could be pictured by the most fertile imagination of a fiction writer. None of them are material to a disposition of this appeal, and they will not be stated except to the extent necessary for an understanding of the case. On and prior to May 22, 1919, one Thomas W. Corby, a widower without issue and 74 years of age, resided on a farm of about 83 acres near Detroit, Mich. He was the owner and possessor of property worth something like $2,000,000.

Madeline Van Desande Beals was a Belgian immigrant to this country and was about 22 years of age at that time. Prior thereto she had become a servant in the household of Thomas W. Corby. She was then a widow, having formerly married one Beals, who had died. She became pregnant after her employment and accused Corby of being responsible for her condition, which he denied. To avert litigation, scandal, and possible exposure, he agreed to marry her, which he did on the date mentioned, but never cohabited with her and immediately separated from her. She was paid by Corby upon obtaining a divorce from him as a support for herself and her prospective child the sum of $50,000. She took up her abode in Dayton, Ohio, where the child (a girl) was born on September 16, 1919. The record is somewhat confused, but we gather from it that she was appointed guardian for her infant child to manage for it its part of the sum paid her by Corby.

On October 23, 1922, the divorce from Corby was rendered, and he died intestate and without issue on June 8, 1924. In the meantime Madeline (who is the appellant, Madeline Corby Morgan Webber) married a man by the name of Morgan, who resided with her in Dayton, Ohio. Upon the death of Corby a controversy arose over the appointment of a personal representative of his estate. Mrs. Morgan, for and on behalf of her infant child, whose father she insisted was the decedent Corby, asserted her right to designate who should be appointed administrator of Corby's estate; whilst his collateral heirs claimed the right to make such selection. That controversy finally found itself in the Supreme Court of Michigan, and the question was settled in the case of In re Corby's Estate (Corby v. Rabaut), 231 Mich. 235, 203 N. W. 877. It was therein held that the infant, Marie, was prima facie the lineal heir of the deceased, Thomas W. Corby, and as such had the right through her proper representative to recommend the one to be appointed as administrator of his estate. The controversy over the right of Marie, the infant, to inherit the property of her alleged father continued and was not terminated until the guardian for Marie effected a settlement with the collateral heirs of Corby, whereby she became the owner of property of the value of approximately $1,500.000.

After that was done, or during the negotiations so terminating, the appellant, mother of Marie, took up her

abode in the city of Covington, Ky., and on October 8, 1925, she and her husband were appointed joint guardians of Marie and executed bond and qualified as such. Their surety was a bonding company which, after a time, moved the county court of Kenton county to be released, which motion was sustained, and another bond was made with a different surety company. It also later became released with like consequences, the last surety being the appellant and defendant below in this case, Massachusetts Bonding & Insurance Company; the date of its bond being May 26, 1933.

On June 8, 1928, Madeline obtained a divorce from her then husband, Russell Morgan, and she was later appointed sole guardian for her infant daughter; the bond executed by the appellant and defendant below, Massachusetts Bonding & Insurance Company as surety, was only for her as such sole guardian. She later married a man by the name of Webber, who when last heard from, so far as this record discloses, was still her husband. In the meantime, and after Madeline and her husband were appointed guardians for their infant ward and had taken up their abode in Covington, they brought with them intangible assets of the ward consisting of bonds, stocks, and other securities amounting in the aggregate to slightly more than $950,000, and deposited them in a safety box in a bank in Covington, Ky., where they remained until the tax proceeding hereinafter mentioned had been heard and submitted in the Kenton circuit court in May, 1933, to which court it had been appealed from the Kenton county court.

That proceeding was instituted under section 4260-1 of our present Statutes on June 2, 1932, against the guardian to assess for taxation the intangible property of the ward above alluded to for each of the five years prior thereto, which, it was alleged, and later proven, had throughout that period been in Kenton county where both the ward and guardian resided and had never been listed for taxation in Kentucky or elsewhere. For some reason not necessary to be stated, the county court declined to assess any of the property as prayed for therein, but the commonwealth appealed to the Kenton circuit court, where the case was again heard and submitted in May, 1933, but judgment was not rendered therein until September following—the case being under consideration in the meantime—and when the judgment

was rendered it was entered as of the day of submission. It assessed for the years involved designated amounts of intangible personal property that was in Kenton county on the respective assessing dates of July 1 for each of the years; the total aggregate of the taxes, with penalties, amounted to about $42,000, for which sum judgment was rendered against the guardian—the infant not being a party to that proceeding.

Shortly after the submission of that case in the circuit court, the appellants (the guardian and her then and present surety, Massachusetts Bonding & Insurance Company) determined to move the intangible securities of the ward from the place of their deposit in Covington to a bank in Cincinnati, Ohio, and the superintendent of the bonding company for that district, with the guardian and, perhaps, others, packed the securities in a grip and carried them over to Cincinnati and deposited them in a bank therein. When that became known (which was before judgment was rendered therein in the following September), a motion was made in the Kenton county court to remove the mother of Marie as guardian on the ground that she had moved the assets of her ward out of the state without court permission and had herself become a resident of the state of Ohio by having purchased a residence near Cleveland, Ohio, and removing thereto. That residence was deeded to her ward, since it was paid for with the latter's assets. Madeline (guardian) resisted that motion and filed at least two affidavits denying that she had become a nonresident of Kentucky, but that, on the contrary, she and her ward still resided in Covington, Ky. However, the court sustained the motion and appointed another guardian, but the latter found the cupboard empty and became possessed of no assets, or practically none.

After the assessing judgment was rendered and entered of record, the commonwealth procured execution to issue thereon, which was returned no property found; whereupon this ordinary action (later transferred to equity by agreement) was filed against the guardian and her surety (appellants here and defendants below) to recover the amount of the taxes assessed by the judgment of the Kenton circuit court, but no service was ever had on the guardian, nor did she enter her appearance therein, although the judgment appealed from readjudges her to pay the amount of the assessment. Her

surety supra (to whom we shall continue to refer as the bonding company) made many defenses, and which were presented by motions, demurrers, and pleadings. After the issues were made and the evidence heard, the court rendered judgment in favor of plaintiff against both the bonding company and its principal, the former guardian, from which the bonding company prosecutes this appeal and filed the record in this court, but the statement on appeal also contains the name of the ex-guardian as a party appellant, and we had as well dispose of her grounds for a reversal at this point.

It is, that there was already a personal judgment against her, rendered in the assessment proceedings, and that an additional one on the same claim in this case was not authorized—furthermore, that in this case she was not served with process, nor did she enter her appearance. If, however, it be conceded (and perhaps it should be) that either or both of those grounds are well taken, then the judgment in this case would be void, and before the defendant therein could appeal from it she should apply to the court rendering it to set it aside on the ground that it was void, which was not done. See section 763 of the Civil Code of Practice. However, both judgments will be satisfied when the one rendered in this case shall have been paid. The arguments made by learned counsel for the bonding company require a more extensive consideration.

The statement in the assessment proceedings as originally filed, and repeated in amended statements, specifically and expressly pointed out that it was against the guardian, not individually, but exclusively in her fiduciary capacity, and sought solely the assessment of her ward's property as well as a judgment for the amount of the assessment against her as such guardian to be paid out of the ward's estate. The assessing judgment followed literally those averments. Notwithstanding, the bonding company as one of its chief defenses insists here by learned and able counsel that the assessing judgment was nothing more than a personal judgment against the guardian individually and not as guardian, and that neither the ward nor its estate was obligated thereby. That insistence is sought to be sustained by counsel's interpretation of section 4023 of our Statutes saying, inter alia: "The holder of the legal title, and the holder of the equitable title, and the claim-

ant or bailee in possession of the property on the first day of July of the year the assessment is made, shall be liable for taxes thereon; but, as between themselves it shall be the duty of the holder of the equitable title to list the property and pay the taxes thereon, whether the property be in possession or not at the time of the payment.'' The many cases cited and relied on in support of that contention, according to our interpretation of them, fail to do so.

A guardian in possession of property of his ward is required to list it for taxation within the jurisdiction of its taxable situs, and if he fails to do so then he may be held personally liable; but even in that case, as between him and his ward, the latter, and its property, are primarily liable, and if the guardian should be required to pay the taxes out of his personal and individual estate he is given the right to proceed to recoup for himself the amount so paid, out of the estate of his ward. See section 4023, supra, and section 4033 of our present Statutes. It therefore logically follows that, if perchance the assessment judgment in this case was for any cause insufficiently framed so as to bind the ward or its estate, yet it abundantly appears that the sole purpose was to recover the taxes due from the ward's estate, and if the guardian, though only personally and individually bound by the judgment as rendered, should be compelled to pay it out of his individual estate, he could then proceed to recoup the amount so paid by him from the estate of his ward. However, we are confident that the judgment rendered in the assessment proceedings in this case had the effect to bind the estate of the ward, since the entire proceedings from beginning to end had no other purpose in view than to obtain from the ward's estate the payment of its part of the public revenues of the commonwealth, and that the judgment was and is essentially one against the ex-guardian in her representative capacity and the fact, if it be one, that the judgment also obligated her personally to pay the amount of the taxes assessed, that fact would not serve to relieve the ward's estate from the duty to pay the amount of that judgment.

There is cited, in support of the contention that the judgment was only an individual or personal one against the guardian, the case of Commonwealth v. Churchill, 131 Ky. 251, 115 S. W. 189; but a mere read-

ing of that opinion will be sufficient to point out the distinction between its facts and those found in this record. In an annotation to the case of Jones v. Johnson, 72 Okl. 134, 178 P. 984, reported on page 903 of 21 A. L. R., the annotation beginning on page 908, a thorough discussion of the question is made as to when a judgment against a fiduciarcy or one in a representative capacity is binding on his cestui que trust. From what is therein said, and under the cases and authorities therein cited, it is clear that in this case the assessing judgment bound the estate of the ward and when rendered it became the duty of the ward to comply therewith.

But it is furthermore insisted that, even so, the obligation of the surety (bonding company) in this case went only to defalcations of its principal to her ward in the management of its estate in her hands, and not to an obligation of the guardian to pay taxes due from her ward's estate. We have already seen that it is the duty of the guardian to assess and pay taxes due from his ward's estate, and section 2023, Ky. Stats., expressly provides that: "Any one damaged by the act or omission of a guardian as such may sue upon his covenant." Certainly the commonwealth would be and is damaged on account of the omission of the guardian in this case to discharge her statutory duty to pay the taxes on the estate of her ward, and it would seem to inevitably follow that under the provisions of the section of the statute last cited the surety is bound to pay the tax judgment against the estate of the ward herein. But authorities are abundant, aside from the provisions of the section of the statute referred to, sustaining the right of the commonwealth in this case to recover the amount of the assessed taxes from the surety of the guardian. Among the texts and authorities so holding, we append, 'American and English Ency. of Law (2d Ed.) volume 15, p. 79; 28 C. J. 1294, sec. 497; Baldwin v. State, 86 Md. 587, 43 A. 857; Lewis v. Oliver, 96 Ga. 260, 22 S. E. 949; Payson v. Tufts, 13 Mass. 493; Conant, Adm'r, v. Kendall, 21 Pick. (38 Mass.) 36; Frost v. Redford, 54 Mo. App. 345. Compare also Wilson v. Soper, 13 B. Mon. 411, 56 Am. Dec. 573, and Hobbs and Churchill v. Middleton, 1 J. J. Marsh. 176.

We therefore conclude, without more extended discussion or elaboration, that the appellant bonding company, as surety for the guardian in this case, is liable to

the commonwealth for the amount of the assessing judgment in its favor, independently of any participation by it in the unauthorized removal of the ward's entire estate from its taxable situs in Kenton county, Ky., without first obtaining the consent of the proper court to make such removal. Whether or not such participation on its part would itself alone furnish sufficient ground to enable the commonwealth to recover against it in this action need not be determined, since we have concluded that it was and is liable under the authorities supra, and especially under the sections of our statutes to which reference has been made.

Having disposed of the decisive and major propositions, it becomes unnecessary to refer to or discuss any of the others relied on in substantiation thereof, and being convinced that the judgment appealed from was and is proper, it is affirmed as to the Massachusetts Bonding & Insurance Company; but the appeal by Madeline Corby Morgan Webber, for the reason hereinbefore stated, is dismissed without prejudice.